## A. H. Sprowls v. Morris Township, Appellant.

[Marked to be reported.]

*Negligence—Contributory negligence—Sudden danger—Roads.* ·

A person who is suddenly placed in a position of danger by the negligent act of another is not responsible for an error of judgment committed in an attempt to extricate himself whereby he incurred another danger, without negligence of his own.

In an action against a township to recover damages for personal injuries by falling over an embankment on the side of an unguarded public road, it appeared that at the point where the accident occurred the road was only ten feet wide. On the upper side was a steep, inaccessible bank, and on the lower side a steep declivity down a bank fourteen feet on its slope, and ten to twelve feet in perpendicular depth. At the foot of the bank was a sunken space or gutter two and one half feet in width, and immediately beyond, the bed of a railroad track, the nearest rail being about four feet from the foot of the bank. The road inclined upwards toward the brow or knoll a short distance, beyond which the plaintiff said he could not see the road. According to plaintiff's own testimony, when he reached this point in the road he saw a train approaching him about six hundred and eighty feet distant. The train was running at the rate of fifteen miles an hour, and it would have reached his position in about thirty-five seconds from the time he first saw it. Plaintiff's horse took fright, and plaintiff was carried over and down the embankment and injured. Plaintiff testified that under the circumstances he thought at the time that it was best for him to stay in his buggy and try to control his horse, keep him in motion, and gain a better position, if there was such, on the other side of the knoll. *Held*, (1) that the question whether the plaintiff exercised the care and caution that a reasonably prudent and cautious man would have done under the circumstances was for the jury; (2) that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 20, 1896. Appeal, No. 134, Oct. T., 1896, by defendant, from judgment of C. P. Washington Co., Feb. T., 1896, No. 33, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries. Before McILVAINE, P. J.

At the trial it appeared that plaintiff was injured on September 18, 1895, by falling over an embankment at an unguarded point on the public road in Morris township. Plaintiff was not acquainted with the road where the accident occurred. The description of the road and the circumstances of the accident, together with the material portion of plaintiff's testimony are given in the opinion of the Supreme Court.

The court charged in part as follows :

[On the morning of September 18, 1895, the plaintiff, who for the last five or six years has been a resident of Elgin, Illinois, left his mother's home in West Finley township in this county to go to Clarktown. He had been to Ringland's Grove on some previous occasion and knew the road that far, but from that point to Clarktown, he was unacquainted with the public roads. He was told that when he got to Ringland's Grove he had only to follow the road down Ten Mile creek and he would reach the place of his destination. He passed Ringland's Grove and reached H. H. Conger's house about eleven o'clock in the forenoon; at this point he struck the west end of this ten or twelve hundred feet of road which runs parallel to the railroad track. After he passed Conger's house, and was on the rise going up towards this knoll, he saw the train down the track at a point six hundred and fifty feet west of the crossing; he went on, reaching the knoll about the same time that the engine of the train reached a point directly opposite to the knoll; he going east, and the train coming west. His horse frightened and attempting to turn, went down over the slope, taking the buggy with him. The plaintiff was thrown out, and alighted at the side of the railroad track, under the baggage car, (the train still in motion). Part of the baggage car and two other cars that were attached passed over his body as he lay along side of the north rail of the track, and one of the wheels ran over his foot and

crushed it, and he was bruised in front and on the right shoulder and breast.   The train was stopped; he was taken to Waynesburg, had his foot amputated—all but the heel was cut off.

Now, gentlemen, you will take the testimony in this case and find the facts.   What are the facts touching the condition of this road; Second, what are the facts touching the condition of the plaintiff, and the manner in which this accident occurred? I have referred only in a general way to the condition of the road, and the manner in which the accident happened, because the witnesses do not agree in all particulars, and it is for you, and not for the court, to say what the exact facts proved are.] [2]

[Second, as to the plaintiff's conduct: the plaintiff claims that he was unacquainted with the road; that when he first saw the train, he saw this knoll a hundred feet or more ahead of him, but that he could not see the public road beyond that point, and being a stranger, did not know what lay beyond, but thought perhaps it might be wider, or that it turned off further from the railroad, and in place of getting out he drove on, hoping to get to a safe place; that when he got to the top of the knoll he found the road as it has been described here; and that when the train was almost up to a point opposite to him, his horse scared and became unmanageable and went over the bank.   He claims from the time he first saw the train he exercised his best judgment in an attempt to pass the train, fully realizing all the while that he was in a dangerous place.   The defendant claims that the plaintiff should have gotten out of his buggy; that he had plenty of time to do so; that he voluntarily stopped his horse and remained in the buggy and took the risk.] [3]

Defendant's points and answers thereto among others were as follows:

5. If the jury find from the evidence that the plaintiff stopped his horse on this bank, and remained seated in his buggy while the train approached him; that the condition of the road and bank below was such as would have indicated to a man of ordinary care and prudence that there was danger of injury if he remained in the buggy, and that if he had alighted from the buggy when he saw the train approaching he would have saved himself from the injury received, but that instead of alighting

from the buggy he remained seated until his horse took fright, then the plaintiff was guilty of contributory negligence, and the verdict must be for the defendant. *Answer:* That is affirmed; but we leave it to you, gentlemen, to determine what the conduct of an ordinarily careful and prudent man under the surrounding circumstances would have been. [5]

6. Under all the evidence the verdict must be for the defendant. *Answer:* Refused. [6]

Verdict and judgment for plaintiff for $5,700. Defendant appealed.

*Errors assigned* were (2, 3, 5, 6) above instructions, quoting them; (4) that the charge was unfair and misleading.

*R. W. Irwin,* with him *M. L. A.* and *B. E. McCracken* and *J. Q. McGiffin,* for appellant.—The charge was inadequate: Herstine v. Lehigh Valley R. R., 151 Pa. 244; Burke v. Maxwell, 81 Pa. 139; Reichenbach v. Ruddach, 127 Pa. 564; Nieman v. Ward, 1 W. & S. 68; Parker v. Donaldson, 6 W. & S. 137; Heilbrumer & Co. v. Waite, 51 Pa. 259; R. R. Co. v. Brandtmaier, 113 Pa. 610; Bisbing v. Bank, 93 Pa. 79; Gehman v. Erdman, 105 Pa. 371; Reber v. Herring, 115 Pa. 599; Tietz v. Phila. Traction Co., 169 Pa. 516.

Plaintiff states that when he first saw the train he realized that he was in a dangerous place. He had plenty of time to act, and it was his plain duty to have gotten out of his buggy. If, instead of doing this, he continued moving on, although he knew that every moment his danger was increasing, he was guilty of the grossest negligence, and has no just claim upon Morris township for the consequences of his rashness: Keeley v. Shanley, 140 Pa. 213.

*Albert S. Sprowls,* with him *J. M. Sprowls,* for appellee.—A corporation which is bound to keep its highway in repair and safe condition is liable for an injury caused by its neglect to do so, and it is immaterial whether the neglect was willful or otherwise: Norristown v. Moyer, 67 Pa. 355; Erie v. Schwingle, 22 Pa. 384.

The charge was sufficient: Connor v. Traction Co., 173 Pa. 602: Schum v. P. R. R., 107 Pa. 11; Brookville Boro. v. Arthurs, 152 Pa. 338.

When a person has been put in sudden peril by the negligent act of another and, in an instinctive effort to escape from the peril, falls upon another peril, it is immaterial whether under different circumstances he might and ought to have seen and avoided the latter danger: Aiken v. P. R. R., 130 Pa. 380; R. R. Co. v. Rohrman, 13 W. N. C. 258; Phila. & Reading R. R. v. Hummell, 44 Pa. 379.

OPINION BY MR. JUSTICE GREEN, January 4, 1897:

It was testified on the trial, and not disputed that the train on the railroad was running at the time of the accident at a rate of about fifteen miles an hour. This would require about four minutes to a mile, or one minute to a quarter of a mile. According to the plaintiff's testimony the point at which he first saw the approaching train was, as ascertained by subsequent measurement, about six hundred and eighty feet distant from the train. At the rate of speed at which the train was moving it would have reached his position in about thirty-five seconds from the time he first saw it. He had that much time only to consider his position and his surroundings, and to determine what it was best for him to do. The road was very narrow, not more than ten feet in width. On one side was a steep, inaccessible bank, and on the other a steep declivity down a bank fourteen feet on its slope, and ten to twelve feet in perpendicular depth. At the foot of the bank was a sunken space or gutter two and a half feet in width, and then the bed of the railroad track, the nearest rail being about four feet from the foot of the bank. The road inclined upward towards the brow or knoll a short distance, beyond which the plaintiff said he could not see the road. What was he to do? It is very evident that he would not have time to turn around, even if there was space enough to do so, and it is impossible to tell whether if he did, he would be in any safer condition than if he continued to face the train. Should he jump from the carriage and endeavor to reach the horse's head? Or should he remain in the carriage and endeavor by keeping the horse in motion facing the train, to control his movements so as to get him past the moment of danger? This is the plaintiff's own account of his mental operation at the moment of the crisis: " I looked down and saw the train coming on me ; well the train was coming right

direct to me; I couldn't make any estimate of the rate of speed
the train was running; I glanced the minute I saw the train, I
glanced down at the railroad track and saw I was very close to
the railroad; there was no barricade between me and the rail-
road at that point, simply the bank down to the railroad, and
I couldn't see up over this road to see what the condition of the
road was on the other side, and I thought the best thing for me
to do at that point was to try to make a safe point and get over
this knoll, and perhaps I would find the road on the other side
of the knoll in better condition than it was on this side; these
trees obstructed my view, and the height of the knoll prevented
me from seeing over the knoll.   Q. Then you kept driving
straight on?   Well, I was very close to the edge of the road, and
the road being narrow at that point, and it was a hot day, and
I had the top of the buggy up, and the road was narrow as I
told you, and I took into consideration, first, of giving a leap,
springing out of the buggy, but the train approaching I didn't
feel I had time to jump out of the buggy there and get to my
horse in time to hold it; the road being narrow, I was afraid if
I gave a jump there I might go clear over, from the fact of the
little room from where the wheel stood until you came to the
bank; and under these conditions I thought it was the best
thing to stay in the buggy and try to control my horse, and keep
him in motion, and gain a better position, if there was such, on
the other side of the knoll."

This was what the plaintiff thought, in view of the exigencies
of the situation, it was the best thing for him to do.   Conced-
ing for the moment that he was responsible for the correctness
of his judgment in such an emergency, who is to decide the
question as to what he ought to do?   Certainly not the court.
In no aspect was it a question of law for the court, and it
would have been the gravest error for the court to have with-
drawn the case from the jury, as was asked by the defendant's
sixth point.   Beyond all question it was for the jury solely to
determine upon the propriety of the plaintiff's action, and the
court left it to the jury in these words, " Now, gentlemen, you
will find the facts on this branch of the case: what are they
under the testimony; and then determine the question, after
you have found the facts, did the plaintiff exercise the care and
caution that a reasonably prudent and cautious man would have

done, taking into consideration all the surrounding circumstances in which he was called to act." Is there any error in this? Most assuredly not. It was the exclusive province of the jury to determine this question, and the absolute duty of the court to submit it to them. The learned judge in a previous part of the charge had plainly and distinctly instructed the jury that if the plaintiff had done anything which an ordinarily careful and prudent man would not have done, and thereby contributed to his injury, he could not recover, and he fully explained the meaning of contributory negligence, and how the rule on that subject should be applied to the facts of the case. He also affirmed without qualification the defendant's second, third and fourth points, which propounded the subject of contributory negligence in the same manner, and committed the whole question to the jury, as he was requested to do by those points.

There is no other view of the matter which it was possible to take. The contradictions in the testimony, which are far more seeming than real, do not at all affect the question. The plaintiff was entitled to be heard upon his own statement of the facts, although there was conflicting testimony, and he had the right to have the jury determine what the actual facts were. Having carefully read the whole of the testimony which the defendant urges as highly contradictory of the plaintiff's testimony, we are bound to say we do not so regard it in any important sense. Some of it is corroborative, and that which is contradictory is in matters of detail that have no important bearing upon the plaintiff's right of recovery. Even if there was doubt as to this branch of the case the plaintiff would be still entitled to the benefit of the rule, that a man who is suddenly placed in a position of danger by the negligent act of another, is not responsible for an error of judgment committed in an attempt to extricate himself, if he incurred another danger without negligence of his own: Aiken v. Pa. R. R. Co., 130 Pa. 380; R. R. Co. v. Rohrman, 13 W. N. C. 258; Vallo v. U. S. Express Co., 147 Pa. 404. In the latter case the doctrine is thus expressed: "When a person has been put in sudden peril by the negligent act of another, and in an instinctive effort to escape from that peril falls upon another peril, it is immaterial whether under different circumstances he might and

ought to have seen the latter danger." The first assignment is entirely without merit and is dismissed.

In the second, third and fourth assignments complaint is made that the charge was unfair in presenting the plaintiff's side of the case, and in omitting to present that of the defendant. After a most careful and painstaking examination of the whole of the testimony with reference to this contention, we are constrained to say that we think it unfounded. The court did not pretend to discuss the testimony in detail, or even to state it. The matter of the second assignment is a mere general narrative of the leading prominent facts of the case, for the information of the jury, and we cannot see any departure in it from the manifest facts as testified to by the witnesses on both sides. The matter complained of in the third assignment is only a statement of what the plaintiff claimed, and it also stated the material claim of the defendant, to wit, that the plaintiff should have left the buggy; that he had plenty of time to do so, whereas he remained in the buggy and took the risk of doing so. All of this the court fairly left to the jury. While the court did not present the testimony of the defendant in detail, the same was true as to the testimony of the plaintiff, and we cannot discover any lack of fairness or impartiality towards the defendant in the entire charge. These assignments are not sustained.

The fifth assignment is still more trivial. The fifth point of the defendant was affirmed as it stood, which was more than the defendant was entitled to, because it asked a binding instruction without considering the effects of the plaintiff's act in a sudden emergency, and when the court added the qualification that the jury should determine what would be the conduct of an ordinarily prudent and careful man in view of all the circumstances, he merely repeated what was the undoubted law of the case. The point should not have been affirmed absolutely, because it did not necessarily follow that the plaintiff could not recover although he remained in the buggy. Although he may have committed an error of judgment in doing so, the emergency was too sudden, and too extreme in its possible consequences, and the time for deliberation was entirely too short, to charge the plaintiff with the consequences of a mistaken judgment. Yet the court did affirm the point, with the qualification only that the plaintiff's conduct in leaving the buggy was such as

would have been the act of an ordinarily prudent person.  In the abstract this was not erroneous, and the defendant was not entitled to an unqualified affirmance of the point.

The questions of negligence on the part of the township and contributory negligence on the part of the plaintiff, were carefully explained, and correctly submitted to the jury, who found in favor of the plaintiff.  In our judgment the verdict was entirely warranted by the testimony.

Judgment affirmed.