MARIE H. MAHNKEN AND JOHN MAHNKEN, HER HUSBAND, PLAINTIFFS IN ERROR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MONMOUTH, DEFENDANT IN ERROR.

Submitted July 11, 1898—Decided November 14, 1898.

1. Upon a motion to nonsuit on the ground of contributory negligence, where the alleged negligence must be deduced from facts and circumstances in evidence, the question is usually one for the jury, and the motion will be refused unless it is established by the evidence, beyond fair debate, that the plaintiff was negligent and that the negligence directly contributed to the injury complained of.

2. A public bridge is a highway, and those traveling upon it as a part of a public road or street, have a right to presume, in the absence of notice or knowledge to the contrary, that such bridge is clear of unguarded obstructions and dangers.

3. It is not negligence *per se* for a traveler upon a bridge, who is injured by a defect in the floor thereof, to lift his eyes from the path he is traveling to other objects about him that may attract his attention, and thereby fail to observe the defect. Whether he be negligent or not, under the circumstances, in so doing is a question for the jury.

4. The plaintiff was riding a bicycle over a public drawbridge in the daytime. As she approached the draw she found it off and a carriage in front of her waiting to cross and another carriage coming up behind her. Concluding to dismount, she wheeled to her left to a timber guard dividing the wagonways, one foot square, and alighted on it. In doing so she stepped on the timber guard with one foot, and in her effort to step upon the floor of the bridge with her other foot she stepped into an opening along the timber guard, nine by five inches in dimensions, and was injured. She did not see the opening, but might have seen it if she had looked at the floor where she alighted. She brought suit against the board of freeholders of the county, which had charge of the bridge, and at the close of plaintiffs' case, on the trial,

a nonsuit was granted on the ground that the danger was an obvious one and that in her manner of alighting and in selecting a place to alight she was not in the exercise of due care, but was guilty of negligence which directly contributed to her injury. *Held*, on error, that the nonsuit was wrong and that the question of contributory negligence should have been submitted to the jury.

On error to the Supreme Court.

For the plaintiffs in error, *Frank P. McDermott.*

For the defendant in error, *John S. Applegate.*

The opinion of the court was delivered by

HENDRICKSON, J.    This writ brings up for review a judgment of nonsuit, which was ordered at the close of the plaintiffs' case by the judge holding the Hudson Circuit Court to whom the cause had been regularly referred for trial.

The suit was brought to recover damages by Marie Mahnken and her husband, the plaintiffs below, for alleged injuries suffered by the wife, who will be herein described as the plaintiff, from stepping through an opening in a drawbridge over the South Shrewsbury river, in the public highway leading from Seabright to Little Silver, in the county of Monmouth, known as the Rumson road, and located at or near the borough of Seabright.    The action is based upon the authority of the statute found in *Gen. Stat., p.* 307, which holds the board of chosen freeholders of a county responsible for damages to a person for injuries received because of its wrongful neglect to erect, rebuild and repair a bridge under its charge, as required by law.    The plaintiff was returning upon her bicycle from a short visit to Seabright; she was alone at the time, but was expecting a couple of friends, with whom she had been riding in company, to overtake her; upon reaching the bridge, she found that the draw was off, and that there was a carriage waiting in front of her, and one coming behind her; she was then upon the bridge, and concluded to alight from her wheel, which she did by wheeling

up to the timber guard or string-piece, which separates the two driveways across the bridge, and there dismounting; she did this by stepping upon the timber guard with her right foot, and stepping down with her left foot from the pedal to the floor of the bridge; while in the act of thus stepping down upon the floor of the bridge, her foot went through an opening therein nine inches long and five inches wide, which had been left in the planking alongside the timber guard, thereby causing her to fall and receive severe bruises and lacerations about the knee and the adjacent parts, which are the injuries complained of. The timber guard was about one foot square in dimensions. It was developed on the trial that the defendant had acquired this bridge, which was formerly the property of a bridge company, by condemnation proceedings in 1892, since which time it had been under the care of the defendant. The bridge was built in 1887. This opening, with others similar in character, had been left in the bridge to receive the sweepings. On either side of the bridge there was a passageway for foot people, separated from the wagonways by a railing. The plaintiff had frequently passed over this bridge, but had not observed the openings along the timber guard, and did not observe them on the occasion of the injury, until her foot went into the one in question.

The grounds upon which the nonsuit was ordered, as stated by the trial judge, were, that the danger from the opening was an obvious one, which the plaintiff must have seen, if she had been in the exercise of ordinary care, when she alighted from her wheel; that she had a right, being in the use of a vehicle, to be on the driveway of the bridge, but that there was a question whether she had a right to alight at the timber guard, where the opening had been located as a part of the construction of the bridge, and so located that people could not get into it without getting where they had no right to be; that the place was a dangerous one, and the danger was obvious.

This view has been presented by counsel in the argument

here, with the added point that there was no negligence on the part of the defendant.

The first proposition submitted is that there is shown to have been a want of ordinary care on the part of the plaintiff in dismounting from her wheel.

One of the specifications under this head is that her manner of dismounting, as described by herself, is an unnatural and awkward one, and that a fall would be the natural consequence of such an attempt; but it must be noticed that there is no evidence on this point except that of the plaintiff, and she says she was familiar with the wheel and accustomed in its use, to mount and dismount without assistance, and that, this being a lady's wheel, she dismounted in a proper manner on this occasion.

Upon cross-examination some doubt may have been raised as to this by her admission that while she put the right foot over the wheel and placed it on the timber guard, she retained her seat in the saddle.   But upon her re-examination she explained that she did not mean that she sat still on her wheel while dismounting, and that the rider cannot sit still in so doing but must rise in the seat and stand on the pedal, and that there was nothing out of the ordinary in her manner of dismounting on this occasion.

Counsel admits that this manner of dismounting was all right if done in a level place, but insists that it is not the best way to alight when approaching an elevated object.   Now in the absence of other evidence, can the court say that there is room for but one opinion or conclusion from the facts as to her want of due care in alighting, and that it is clearly manifest that her carelessness directly contributed to this injury? I think, taking the evidence most favorable to defendant's contention, the question is a debatable one, and if so it must be submitted to a jury. *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180 ; *Central Railroad Co.* v. *Moore*, 4 *Zab.* 824 ; *Durant* v. *Palmer*, 5 *Dutcher* 544 ; *Houston* v. *Traphagen*, 18 *Vroom* 23 ; *Comben* v. *Belleville Stone Co.*, 30 *Id.* 226 ; *Whart. Negl.* (2d ed.) 420 ; *Pennsylvania Railroad Co.* v. *Matthews*, 7 *Vroom* 531 ; *Traction Co.* v. *Scott*, 29 *Id.* 682.

It is further urged that plaintiff was negligent in failing to see the opening and avoiding it; that the occurrence took place in the full light of day; that there was no obstruction to her view and that so large an opening must have been plainly visible; that she had wheeled over this bridge, confessedly, many times and must have known of the existence of these openings, and that previous knowledge of the danger must defeat her right to recover. But again, the question arises, is the evidence so clear and convincing on these points that there can reasonably be no other inference but that the plaintiff was negligent?

A public bridge being a highway, the principles of the common law of highways are applied to such bridges. 9 *Am. & Eng. Encycl. L.* 365. Such a bridge is the one now under consideration.

In *Proprietors, &c.,* v. *Hoboken,* 2 *Beas.* 518, such a structure is described thus, " a bridge, by the concurrent testimony of all past time, in every possible shape and form, is but the ordinary road carried across the river," &c. So that we may justly assume that the plaintiff had a right to be on any part of the traveled wagonways of the bridge. She also had a right to presume that they were clear of unguarded obstructions and dangers. *Durant* v. *Palmer, supra; Houston* v. *Traphagen,* 18 *Vroom* 23; *Suburban Electric Co.* v. *Nugent,* 29 *Id.* 658; 1 *Shear. & Red. Negl.* 353.

It is, of course, the duty of a person traveling on a highway to keep such a lookout for patent defects as is usual with prudent drivers, but what is ordinary care under the circumstances is usually a question for the jury.

It cannot be said that the plaintiff actually saw the opening in question or even knew of the existence of any of these openings, for her uncontradicted evidence is that she did not. And on the question of whether she is to be held liable for imputed knowledge on the subject, on the ground that she must have seen them if she had looked, the further principle of law is pertinent that it is not negligence *per se* for a traveler on foot or upon a vehicle to lift his eyes from the path

he is traveling where there are other objects that may attract his attention.

In *Durant* v. *Palmer, supra,* which was a suit to recover damages for injuries sustained by falling into an unguarded excavation which was within the line of the street and adjacent to a building of the defendant, in the night-time, the plaintiff had deviated from the middle of the pavement to look at some goods in a store window, and failing to look down and observe the excavation, he stepped into it.  It was argued that thereby the plaintiff was culpably negligent and could not recover, but in the opinion of this court it is held that "the deviation from the middle of the sidewalk is not necessarily an act of carelessness, nor is the looking in at a store window conclusively an act of trespass or negligence. They may be so or not, according to the peculiar circumstances of the case.  They are matters of fact to be submitted to the jury under the direction of the court, but they do not constitute sufficient ground of nonsuit."  This doctrine is sanctioned in *Houston* v. *Traphagen, supra,* and in *Sheets* v. *Connolly Railway Co.,* 25 *Vroom* 518.

There are several circumstances to be considered in the present case in reaching a conclusion upon the question of whether the plaintiff was negligent in failing to see the place of danger.

There was the presumption of law that the bridge was in a safe condition.  There was a carriage in front of the plaintiff and one coming behind her, as she was about to dismount, which might justly require a share of her attention.  Upon the principle just referred to, it seems clear that these are matters to be submitted to the jury, and to be considered by them, upon a question of contributory negligence.

The only other question suggested by counsel is that no negligence is shown on the part of the defendant; that the openings were a part of the original structure left for a useful purpose, too close to the timber guard to be dangerous to travelers by carriage or bicycle, and that an unmounted rider of the latter would not be reasonably expected to walk or

stand over these openings. But, inasmuch as it is not unlawful for foot people to cross upon any part of the bridge, and that such an accident might happen from such an opening left unguarded and unprotected, can we say that upon the principles and under the authorities already referred to the question of negligence as to these particulars is not one upon which opinions might reasonably differ? Again, it is urged that municipalities are not bound to do more than to keep their streets and highways reasonably safe for travel, and that in the building or maintenance of a bridge only such care is required as a prudent man would exercise in view of the objects and purposes of the bridge. But who is to be the judge of a condition of reasonable safety in a highway or that ordinary care has been exercised in the maintenance of a bridge, where an accident from its alleged faultiness is in question?

I think it is clear that these questions are within the rule already stated and come within the proper domain of the jury.

The result is that the judgment of nonsuit should be reversed and a writ of *venire de novo* be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GARRISON, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 14.