CHARLES B. SMITH ET UX., DEFENDANTS IN ERROR, v. THE ATLANTIC CITY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 11, 1901—Decided June 17, 1901.

1. It is the duty of a railway company to exercise ordinary care in the management of gates at crossings, and it is responsible to a traveler, who, being without fault himself, is injured by the negligent management of such gates.

2. The plaintiff, at the railway crossing of a city street, was struck by a descending safety gate, as she reached the end of the crossing, and was severely hurt; the gates were open when she began to cross, and she failed to notice the lowering of the gates before she was struck. The gateman did not see her, but there was no obstruction to his view of her while crossing. On the trial of the action against the company, motions to nonsuit and to direct a verdict were made and denied. *Held*, on review, that the question of the gateman's negligence was for the jury; also that in view of the fact that the open gate was an invitation to the plaintiff to cross, and that notwithstanding this it was still her duty to look and listen for trains and to extend her observation to approaching vehicles and to the safety of her path, the question of contributory negligence, in failing to look further at the gates, was properly submitted to the jury.

3. The exceptions taken to portions of the charge were not sustained.

On error to the Supreme Court.

For the plaintiff in error, *J. Willard Morgan* and *Charles V. D. Joline.*

For the defendants in error, *Howard Carrow.*

The opinion of the court was delivered by

HENDRICKSON, J. This writ is brought to review the ruling of the trial judge of the Camden Circuit in a suit brought by Charles B. Smith and Marion, his wife, against the defendant company. The claim is for damages resulting from personal injuries to the wife, caused by her being struck by a descending safety gate, while crossing the railroad tracks of the com-

pany where they intersect with Second street, near Kaighns avenue, in the city of Camden.

The accident occurred about nine and a half o'clock in the daytime on March 19th, 1900. The injured plaintiff was walking along one of the sidewalks of Second street, which runs north and south, with the purpose of visiting a neighbor. She had passed the northerly safety gate, which was open, and was struck upon the back of the head and neck by the southerly gate, just as she reached the end of the crossing, and was quite seriously injured. The principal assignment of error is based upon the refusal to nonsuit at the close of the plaintiff's case. The ground of the motion, as stated, was contributory negligence on the part of the plaintiff.

To sustain an exception to such a refusal to nonsuit it must be clearly established, from the facts and circumstances developed in the plaintiff's case, that her failure to exercise ordinary or reasonable care proximately contributed to the injury complained of.

If, upon the facts proven, the question of contributory negligence is a fairly debatable one, it must be submitted to the jury. *Pennsylvania Railroad Co.* v. *Righter,* 13 *Vroom* 180; *Bonnell* v. *Delaware, Lackawanna and Western Railroad Co.,* 10 *Id.* 189; *Pennsylvania Railroad Co.* v. *Middleton,* 28 *Id.* 154; *Furniture Co.* v. *Board of Education,* 29 *Id.* 646.

It can hardly be said that plaintiff was negligent in entering upon the crossing when the gates were up. It has been held by this court that when a person is about to cross a railroad track where he knows that a flagman is habitually stationed, and finds that he is not at his post, giving a signal of danger, the traveler has a right to presume that a train is not about to pass. *Berry* v. *Pennsylvania Railroad Co., ubi supra.*

The fact that the gates are open is held to be an invitation to cross and an assurance that the track can be crossed in safety. 3 *Ell. R. R.* 1157.

But, notwithstanding this, the traveler must still exercise

reasonable care in crossing, as is held in that case and in the authority cited.

And the contention is that the plaintiff, while passing over the crossing, being in a place of danger, should have looked both for the approach of a train and at the gates which were liable to be lowered upon its approach; that she did not look for the train, nor at the gates, or looking, saw, but did not heed. But the contention is scarcely justified by the facts.

When asked if she looked right ahead all the time when crossing, she replied, "Well, I suppose I did; I don't know that I looked around." When asked if she noticed any train coming, her reply was, "I did not see nor hear any train; I couldn't say whether there was or not."

It appears further in the testimony that there was a wagon coming across north as she was going south. It was also developed in the evidence that she received no warning from anybody that the gates were coming down. Another witness testified that the gates were up when the plaintiff passed upon the crossing; that as she reached the last rail the gates descended upon her, striking her upon the head, and that he heard no bell ring as the gates were lowered. It should be remembered also that the gates, when open, stood perpendicular. It will thus be seen that there were several things to naturally draw plaintiff's attention while she was crossing. It was her duty to look and listen for the train.

Whether she did this or not is somewhat debatable. She might also look for approaching vehicles about to cross, and at the tracks over which she had to walk to see if her way was clear and safe. It is contended that, in addition to observing her other surroundings, she should have been looking at the gates; that she should be charged with the same duty respecting the descending gates as she would be charged with respecting an approaching train. This last proposition is not tenable. The gates are not such a place of danger as a railroad track.

While pedestrians are chargeable with the exercise of reasonable care as to defects or dangers in a sidewalk, it was held not to be negligence *per se* to fail to see an opening in

a public bridge where a person was alighting from a bicycle. *Mahnken* v. *Board of Freeholders, &c., 33 Vroom* 404. See, also, *Durant* v. *Palmer, 5 Dutcher* 544.

It was also held that how a prudent man would act in the face of concurrent and distracting dangers must, in the nature of things, be a question of fact for a jury. *Connelly* v. *Trenton Passenger Railway Co., 27 Vroom* 700.

Considering the different objects and duties which were then present, likely to occupy the attention of the plaintiff in this case, can it be said that she failed to exercise ordinary and reasonable care in not having regard, among other things, to the possible danger of the lowering of these gates while she was passing off the crossing? If so, does this inference so clearly appear as not to be a subject for fair debate? We think not. On the contrary, we think it was a question about which men might reasonably differ, and was therefore a proper subject-matter for submission to the jury.

Another exception taken was to the refusal of a request to direct a verdict for the defendant. It is argued that, upon the whole evidence, there was no negligence shown by the defendant's agents; that the gatekeeper was without fault, and the gate was in proper condition; that defendant's evidence was to the effect that the train was coming fast; that a team was trotting up northbound; that the gatekeeper looked and holloaed to all the people whom he saw to hurry across; that he did not see the plaintiff, either before or at the time she was injured.

But here arises the question of the exercise of reasonable care by the defendant company in the shutting down of its gates. It is the duty of a railway company to exercise ordinary care in the management of gates at crossings, and it is responsible to a traveler who, being without fault himself, is injured by a negligent management of such gates. *3 Ell. R. R.* 1171, and cases cited. By the erection of the safety gates it has recognized the crossing as a dangerous one. As before stated, they were open when the plaintiff started to cross, and therefore she had a right to presume that a train was not about to pass.

There was evidence on the part of plaintiff which tended to prove that the gates were not in proper condition, in that the automatic bell connected therewith was not ringing as usual to give travelers notice that the gates were about to close down. There was nothing to obstruct the gateman's view of the plaintiff as she was crossing, and yet he says he did not see her.

Here were disputed facts to be settled, and, in addition, the question of whether the company was in the exercise of due care when its agent thus let down its gates without looking or seeing whether pedestrians were in the act of crossing, whom it might strike in descending, was, to say the least, a debatable one, and hence the case was a proper one to go to the jury.

The exception to the part of the judge's charge as to the burden of proving contributory negligence cannot be sustained.

The judge's words were: "But then the burden shifts, and it is for the defendant to satisfy you that the plaintiff was guilty of negligence; in other words, that the plaintiff did not use reasonable care, as a pedestrian along the street, to see the descending gate."

The criticism is that from this the jury might infer that the court meant that the defendant must introduce testimony to show that the plaintiff was negligent. We see nothing in the language to justify such a conclusion.

The court properly said, in fact, that the burden was upon the defendant, not to prove by evidence, but to satisfy the jury that, under the proofs, the plaintiff was herself negligent.

And this accords with the legal requirement.

The only other exception argued was the failure or refusal of the court to charge defendant's request that "if the injury was occasioned in any degree by the plaintiff's own negligence, she is without redress, unless the act of the defendant amounted to willful trespass or intentional wrong."

The first proposition here named was fully covered by the charge, and the omission to state the qualifying clause as to

.willful trespass or intentional wrong could not have injured the defendant.

There was no charge of willfulness in the pleadings as to the act complained of, and no evidence in the case to indicate it. It was, therefore, unnecessary to embrace that subject in the charge.

There being no error shown, the judgment should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, DIXON, GUMMERE, COLLINS, FORT, HENDRICKSON, BOGERT, KRUEGER, ADAMS, VOORHEES, VROOM.  11.

*For reversal*—None.