DETERMINED IN THE

# FOURTH DEPARTMENT

IN THE

# APPELLATE DIVISION,

## November, 1902.*

HULBERT GRAY, Appellant, *v.* THE NEW YORK CENTRAL AND HUD-
SON RIVER RAILROAD COMPANY, Respondent.

*Negligence — a gateman at a railroad crossing closing the gate after signaling a man
driving a horse and buggy to cross the tracks — liability where the horse takes
fright and runs away — duty to look up and down the track — refusal of the court
to allow the plaintiff to explain his failure to do so.*

In an action brought to recover damages for personal injuries it appeared that
the plaintiff was driving a horse and buggy in the daytime southerly along a
highway which crossed the defendant's railroad tracks; that, as he approached
the crossing, a west-bound freight train, standing east of the crossing, was
preparing to move and that, in order to avoid frightening his horse, the plain-
tiff drove into an adjoining yard and waited until the train commenced to
move; that he then drove back into the highway at a point 100 feet or more
distant from the crossing; that, as the train had about cleared the crossing, the
defendant's gateman raised the gates guarding the crossing and beckoned the
plaintiff to come across; that the plaintiff thereupon started his horse on a
slow trot for the crossing, devoting his attention to the horse, the crossing and
the gateman, and not looking either easterly or westerly along the tracks to any
extent; that, as he came within a short distance of the tracks, an east-bound
train suddenly came in sight and the gates were lowered in front of the horse,
which took fright and ran away.

The evidence indicated that both the sudden lowering of the gates and the pass-
ing of the train contributed to the frightening of the horse. The plaintiff's
view of the defendant's tracks to the west was obstructed by trees and other
obstacles while the gateman's view in that direction was unobstructed.

*Held,* that it was error for the court to nonsuit the plaintiff;

* The other cases of this term will be found in volume 76 App. Div.— [REP.

That the underlying cause of the accident was the gateman's act in signaling the plaintiff to cross the tracks when the approaching train was too close to afford an opportunity for a safe passage, and that it was for the jury to say whether the giving of such signal constituted negligence on the part of the defendant;

That it could not be said, as a matter of law, that the plaintiff was guilty of contributory negligence in not looking up and down the tracks, as he approached the crossing, and seeing and avoiding the east-bound train;

That it was improper for the court to refuse to allow the plaintiff to explain his failure to look to the west as he approached the crossing.

MOTION by the plaintiff, Hulbert Gray, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the dismissal of the complaint by direction of the court after a trial at the Cayuga County Trial Term.

Also an appeal by the plaintiff from an order made at the Cayuga Trial Term and entered in the office of the clerk of the county of Cayuga on the 16th day of October, 1901, denying the plaintiff's motion for a new trial made upon the minutes.

*James Wright,* for the appellant.

*Daniel M. Beach,* for the respondent.

HISCOCK, J.:

This action was brought to recover damages sustained because of plaintiff's horse becoming frightened and running away. Said fright occurred at a highway crossing of defendant's tracks near the village of Weedsport, and was occasioned by the sudden lowering of defendant's gates in connection with the passage of one of its trains. Plaintiff complains of defendant because, as he claims, he was invited by its gateman to cross the tracks upon assurances of safety, and then when he had come close thereto the passage of the train and the lowering of the gates suddenly took place.

We think the conduct of the defendant and plaintiff upon the occasion in question should have been passed upon by the jury, and that it was error for the learned trial justice to grant a nonsuit.

The evidence upon the trial beyond any question would have warranted a jury in finding the following facts:

Defendant's tracks at the point in question ran substantially east and west and consisted of the four regular tracks and one branch or

switch track lying northerly thereof.   The road upon which plaintiff was traveling ran substantially north and south.   The accident took place in the daytime.   Plaintiff was approaching from the north driving the horse in question attached to a buggy.   A west-bound freight train was standing upon the branch in question easterly of the highway getting up steam.   As a matter of precaution and to avoid fright of his horse, plaintiff drove into an adjoining yard until said train should pass by.   As it commenced to move westerly over the crossing he drove back into the highway at a point distant from the crossing 100 feet or more.   As the train was about clearing the crossing defendant's gateman raised the gates and beckoned to plaintiff to come across.   At that time the plaintiff was either standing still or moving very slowly in the road.   Upon receiving the signal he started his horse on a slow trot for the crossing.   As he came within a short distance of the tracks suddenly a train came from the west and the gates were lowered in front of his horse, which took fright and ran away.

As plaintiff approached the crossing, after receiving the signal of the gateman, he watched his horse, the crossing and the gateman, and did not look either easterly or westerly upon the tracks to any extent.   There were obstructions to his view towards the west from whence the train in question approached.   These obstructions consisted, amongst other things, of a row of trees upon the westerly side of the highway extending nearly down to the tracks; also of quite a large orchard situated westerly of the highway and in the angle between it and the railroad tracks; also of two other short rows of trees westerly of the highway and extending at right angles with it. In addition the freight train first mentioned proceeding westward upon the branch track for some distance obstructed plaintiff's view of the main tracks.   Defendant's gateman had a long unobstructed view of all its tracks towards the west subject to the temporary interruption thereof by passing trains.

It may be doubtful whether a jury would have had the right to say that the fright of plaintiff's horse was caused in whole or in part by the passage of the train.   Plaintiff himself states at one or more places that it was the sudden lowering of the gates in front of his horse that frightened him.   Other evidence which was before the jury, however, indicated that the fright of his horse occurred coin-

cidently with the passage of the train and under such circumstances that we think a jury might have been permitted to say that the latter contributed to the fright. We, however, do not regard it as of special significance in this case whether the horse was scared by the passage of the train or by the unexpected and abrupt lowering of the gates or by both together.

It readily may be conceded, as argued by defendant's counsel, that under many circumstances a railroad company would not be liable for the fright of a horse at a highway crossing. If a traveler voluntarily, and acting upon his own responsibility, should approach a crossing and his horse should become frightened by the ordinary passage of a train or by the proper lowering of the gates there could not be a recovery. His mishap would be the result of risks naturally and reasonably incident to the operation of a railroad.

We do not, however, regard this appeal as presenting such a case. Here the plaintiff was proceeding with more than ordinary caution, keeping away from the crossing while trains were being operated thereover, and apparently seeking to avoid just such an accident as finally did overtake him. He was drawn away from this course of conduct by defendant's agent. Not only by the raising of the gates, but by the affirmative, specific signal of the gateman he was invited and directed to cross the tracks. He was, in effect, assured that the crossing would continue clear for a long enough time to enable him to reasonably and safely proceed over it. He was, as we think, in substance guaranteed that there would be no material change in the conditions which surrounded the crossing while he was proceeding over it which would be reasonably calculated to increase his risks in so doing. Obeying and acting upon the directions and assurances which he received, as a jury might say, he started to make the crossing, and then, when he had come in close proximity thereto, a train suddenly passed over it, and the gates were lowered in front of his horse, causing the accident complained of. We think there is no reasonable opportunity for difference in opinion that the passage of the train and the lowering of the gates were a breach and a violation of the signals and directions which the gateman had given to plaintiff to proceed. It seems to us also quite clear that a jury would have the right to hold defendant responsible for the damages which resulted from such conduct. Very likely when plaintiff had

been brought close to the tracks and the train approached the cross-ing, it was the duty of the gateman to drop the gates. That was perhaps necessary as the lesser of the two evils and to prevent a still more serious accident than did happen. The fault of the defendant's employee might be said by a jury to lie back of that act, and to have been committed when he signaled plaintiff to cross the tracks, with the implied assurance that he had sufficient time to do it, when, as a matter of fact, the approaching train did not afford such opportunity for safe passage. We think it was for the jury to say whether such conduct was or was not improper and negligent.

It is urged by defendant's counsel that, even if the latter was negligent, the plaintiff himself was guilty of contributory negli-gence in not looking up and down the tracks and seeing and avoid-ing the approaching train. We think, however, that this question was also for the jury. The plaintiff received the invitation and signal already mentioned to proceed across the tracks. It is well settled that the mere raising of the gates was such an assurance as would very materially relieve him from the ordinary precautions to be observed while approaching the tracks. In addition to that, how-ever, in this case the flagman, by his own personal signals, invited him to come on and practically told him that no train was approach-ing which would interfere with his crossing the tracks. When one of its servants has given such assurances of safety as these it does not lie with the defendant to complain because the traveler has not been alert to discover conditions which are at variance with those which he has been told exist. The plaintiff watched the horse, the crossing and the gateman, very likely believing that if any change did occur the latter would indicate it to him. In addition there were substantial obstructions to his seeing the train in question even if he had looked for it. We do not feel prepared to say as a mat-ter of law that he did differently than a man of ordinary prudence would do under similar circumstances.

The discussion of the latter question brings us to the considera-tion of one or more rulings made by the trial justice in excluding evidence. Assuming that this question of plaintiff's contributory negligence is and was a close one upon the law, it was incumbent upon the trial court to allow plaintiff to give any proper explanation of his conduct in not looking for an approaching train. Upon this

line of examination plaintiff's counsel asked him questions tending to draw out that he relied upon the signals of the flagman in approaching the crossing, and that as he approached he was looking at the gate and the flagman. He was then asked this: "Q. When you were out in the road after having left the Adkinson yard and was in the road with your horse headed southward why didn't you look west?"

This was objected to by defendant and the objections sustained, to which exception was taken. We think this was error. We think the question legitimately called for any proper explanation which the plaintiff might desire to give of his failure to look up the tracks as it is now claimed by the defendant he should have done. We cannot say that his answer would not have been material upon this issue.

The exceptions of plaintiff should be sustained, the order denying a new trial reversed, and a new trial granted, with costs to appellant to abide event.

McLENNAN, SPRING, WILLIAMS and DAVY, JJ., concurred.

Plaintiff's exceptions sustained, order denying motion for new trial reversed and new trial ordered, with costs to the appellant to abide the event.