# JANUARY TERM, 1905.

## PRESENT:

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. WILLIAM R. SMITH,
Hon. EDWIN W. CUNNINGHAM,
Hon. ADRIAN L. GREENE,
Hon. ROUSSEAU A. BURCH,          } Justices.
Hon. HENRY F. MASON,
Hon. CLARK A. SMITH,

C. F. Sager v. The Atchison, Topeka & Santa Fe Railway Company.

No. 13,422.     (79 Pac. 132.)

### SYLLABUS BY THE COURT.

1. Railroads—*Injury at Crossing.* A railway-track crossing a public street is not a warning to a traveler going over it of danger resulting from the negligence of a gatekeeper in allowing an arm of the gate to descend and injure the person crossing the track.

2. ———— *Open Gates—Assurance of Safety.* Open gates tended by a gatekeeper of a railway company where a public street crosses its tracks are an affirmative assurance to a traveler on the street that his safety in crossing will not be imperiled by the descent of a gate-arm.

3. ———— *Injury at Crossing—Contributory Negligence.* After a traveler in a buggy, driving two horses, on a public street at a railway-crossing had passed over the railway-tracks, one arm of a gate in front of him was allowed by the gatekeeper to descend across the buggy in which he was riding. In an action for personal injuries against the railway company the question of contributory negligence should have been confined to the care exercised by the traveler to avoid injury at, and after, the time when the gate-arm began to descend.

Error from Reno district court; Matthew P. Simpson, judge. Opinion filed January 7, 1905. Reversed.

*Waters & Waters*, for plaintiff in error.

*A. A. Hurd*, and *O. J. Wood*, for defendant in error.

The opinion of the court was delivered by

WILLIAM R. SMITH, J.: Main street in the city of Hutchinson is crossed by the tracks of the Atchison, Topeka & Santa Fe Railway Company at a place where there is much travel along the street. Gates, operated by compressed air applied by a gatekeeper, are maintained by the railway company to guard the crossing. The gates are wooden arms which, when raised, stand perpendicular at the sides of the street; when lowered during the movement of trains the arms meet near the center of the roadway, forming an effectual barrier against the passage of teams or vehicles over the railway. There are two of these arms on the south side of the railway-crossing, and two on the north side, which, when lowered, reach over the street. Main street runs north and south. The railway-tracks cross it at right angles.

In August, 1900, plaintiff below was driving two horses to a buggy, going north along Main street. When he approached the railway-crossing the gates on the south side were up, indicating that the tracks were clear for passage over them. There was testimony tending to show that the west arm of the north gate was raised—standing straight up—when plaintiff below crossed the railway-tracks going north; that he did not see the east arm until it was lowered before his face about four feet in front of him; that he dodged back, and an iron prod, or rest, attached to the wooden arm of the gate struck him in the groin. For the injury alleged to have been thus sustained this action was brought against the railway company. There was a general verdict in favor of the company.

Sager instituted proceedings in error to reverse the judgment.

The trial court refused to give the following instructions requested by the plaintiff below:

"5. I instruct you that a person has the right to cross a railway-crossing at a public street, and is not required to look out for or anticipate that an arm of the gate crossing will fall or be let all on him as he is about to leave the crossing."

"7. It was the duty of the gateman at that crossing to shut the gates to prevent passing vehicles from entering on the tracks on the unexpected approach to the crossing of engines, cars and trains, and to open the gates for the crossing of travel at such time as it could cross in safety, upon the tracks being cleared and remaining cleared from the expected approach to the crossing of such engines, cars and trains; and that the open gate, on the raising of the gate, would be an invitation to travel that this crossing was clear and that it could cross, and a person under such circumstances would have the right with his vehicles to start to cross."

Counsel for the railway company, in defending the action of the court below refusing instruction No. 5, above set out, invoke the general rule that a railway-track itself is a warning of danger, and that a traveler before crossing must exercise his faculties of sight and hearing to determine whether he can proceed with safety. Conceding the rule, it can have no application to the facts of this case. Sager was not injured by a passing train. A failure to look and listen before crossing a railway has never been held by this court to constitute contributory negligence except in cases where the traveler on the highway was injured or killed by a train moving on the tracks. The contention of counsel for defendant in error, if followed out, would lead to the conclusion that railway-tracks at a road-crossing are a warning to a person

going over them — a notification in advance of every species of negligence of which the company or its servants might be guilty in any or all departments of its business.   The absurdity of this argument is evident, when considered in its application to hypothetical cases.

The signal of danger given by the presence of railway-tracks would certainly not impose on a person passing over them on the highway the duty of looking and listening for the approach of a mad steer which by negligence of the company's servants had escaped from a cattle car, ran along the track, and gored the traveler at the crossing.   Nor would such warning in any degree affect the right to recover from the company for injuries sustained by reason of its servant's negligently running a truck against another, to his damage.   Nor would any number of tracks in sight of an intending passenger have the slightest influence in defeating a recovery against the company for an assault and battery on him by its ticket agent.

In the present case no injury was received until after Sager had crossed the tracks going north.   His cause of action rested on the negligence of the gateman in letting down the east arm of the north gate after the two south arms of the gate and the railway-tracks had been passed.   The only question of contributory negligence which could possibly come into the case under the evidence before us must have relation to the knowledge of plaintiff below respecting the falling of the gate which hurt him.   If he neglected to avoid the injury, when it was imminent, by stopping his horses or jumping from his buggy, provided he had sufficient notice of the impending danger and it was practicable to do so, he was guilty of contributory negligence.   His negligence, if any, is

to be determined by ascertaining what he omitted to do that was legally required of him immediately after the gate-arm which struck him began to descend.

The gates were erected by the railway company for the security of persons having occasion to use the crossing. The open gates at the south side were an affirmative assurance that it was safe to go over. Plaintiff below drove over the tracks without delay. We can see no element of contributory negligence in the case, unless it might have arisen at or about the time the east arm of the north gate began to descend, as before stated.

Instruction No. 7, quoted above, which was refused, is somewhat involved in its phraseology, yet it states the law fairly. Nowhere in the instructions given did the court inform the jury concerning the duty of the gatekeeper or of the traveler at the crossing. The nearest approach to the relative duties of each is found in instruction No. 4. It reads:

"You are instructed that as the gates of the defendant are over a public highway, not only must the defendant use due care and caution in handling the gates, but parties using the highway must also use due care and caution with reference to the presence of the gates and their operation; and if persons using the highway are also guilty of carelessness which contributed to their injury in passing along the street where the gates are located, it would constitute contributory negligence, and the party or parties could not recover although he or they in fact received an injury, and that by the negligence of the defendant."

The respective care required to be exercised by the parties is here stated in the most general way. The court referred to the contributory negligence of plaintiff below four times in the instructions given, but in no manner particularized respecting the right of the traveler to cross, under the circumstances of this case,

Sager v. Railway Co.

without anticipating that an arm of a raised gate would fall upon him, as set forth in instruction No. 5, which was refused.   The following language in the last instruction quoted was misleading :·

"If persons using the highway are also guilty of carelessness which contributed to their injury in passing along the street where the gates are located, it would constitute contributory negligence."

If instructions numbered 5 and 7, requested by counsel for Sager, had been given, no doubt could have remained in the minds of the jury whether it was a negligent act for plaintiff below to go over the railway-crossing. It might be inferred from the directions given that the mere passing over the crossing of itself, under the circumstances, showed contributory negligence on the part of Sager.   Such is the theory of counsel for defendant in error in this court, and this same view was probably taken by the trial court.

The judgment of the court below is reversed, and a new trial granted.

All the Justices concurring.