## VASCACILLAS v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Ninth Circuit. January 7, 1918.)

No. 3035.

1. RAILROADS ⊜⟶330(2)—CROSSING ACCIDENTS—GATES—PRESUMPTIONS.

Ordinarily, where safety gates maintained by a railroad company are open, there is an implied invitation to persons traveling the street to enter upon the crossing, and, while such persons are not relieved from the duty of taking reasonable precautions to avoid injury by moving trains, they may reasonably presume that the railroad company's servants have performed their duty in ascertaining that the crossing is safe, and hence, where the safety gates were open and plaintiff's view was obstructed, he was warranted in driving upon tracks, assuming that defendant's servant had discharged his duty and that the crossing was clear for his passage.

2. RAILROADS ⊜⟶350(30)—CROSSING ACCIDENTS—"NEGLIGENCE PER SE."

It is not "negligence per se" to cross in front of a moving train, when the distance and the speed of the train are such as not to render the crossing unsafe.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence Per Se.]

3. APPEAL AND ERROR ⊜⟶927(7)—REVIEW—DIRECTED VERDICT—PRESUMPTION.

On motion for an instructed verdict, the testimony must be viewed in the light which is most favorable to the adverse party.

4. RAILROADS ⊜⟶350(28, 30)—CROSSING ACCIDENTS—JURY QUESTION.

Where plaintiff, who drove onto defendant's tracks when safety gates were raised, saw a train approaching on the track in front of him, but, as it was a considerable distance away, drove across the track, and was caught when the gates towards which he was driving were lowered, the question whether plaintiff was guilty of contributory negligence in so driving on the tracks, and whether he was negligent in alighting from his vehicle, it appearing that he was injured when his team, frightened by the train, began to run after the gates were raised, held for the jury.

5. NEGLIGENCE ⊜⟶72—CONTRIBUTORY NEGLIGENCE—ACT IN EMERGENCY.

One exposed to sudden danger is not chargeable with negligence simply because he does not adopt the safest course to avoid the injury.

In Error to the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Action by Antone Lewis Vascacillas against the Southern Pacific Company, a corporation. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

The plaintiff, a teamster, was driving a team, with a wagon loaded with lumber, on a street running north and south in the city of Reno, when he approached a railroad crossing where the defendant had five tracks running east and west. On both sides of the crossing the defendant maintained gates, which were operated by a watchman in a tower. The gates being open, the plaintiff proceeded on his way across the tracks. His view to the left was obscured by box cars standing on the tracks. When he had reached the third track, and his team was, as he testified, on the fourth track, he discovered a freight train, then distant about two city blocks, approaching from the east on the fourth track. The plaintiff urged his horses to increase their speed, and he would have passed over all the tracks before the train could have reached the crossing, had not the defendant's gate tender lowered the south gates. Those gates descended three or four feet in front of the horses,

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

while they stood upon the fifth track and the wagon was on the fourth track. In the meantime the freight train was being brought to a halt, and there was much noise from escaping of steam. The horses became frightened, and began to rear and plunge. The plaintiff testified that he tried to make the horses break through the gate, but they would not go, so he jumped off on the fifth track, and on the east side of the team for fear of being hit by the train. When he jumped off, he had the lines in his hand, and thereafter was trying to hold his horses, and was alternately looking up to the tower to see if the gateman was going to raise the gates and watching his horses. The gates were raised after having been down about a minute, and immediately the horses started upon a run. The plaintiff tried to hold them, and steer them, but when they turned he was thrown under the wagon and injured. The trial court directed the jury to return a verdict for the defendant, holding that the plaintiff was negligent in attempting to cross in front of the oncoming train, and also that he was negligent in not remaining upon his wagon, or in not getting on the wagon again before the horses started.

J. B. Dixon and M. J. Scanlan, both of Reno, Nev., for plaintiff in error.

Frank Cleary, of San Francisco, Cal., and Brown & Belford, of Reno, Nev., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is the general rule that the fact that safety gates which are maintained by a railroad company at a street crossing are open is an implied invitation to persons traveling the street to enter upon the crossing, and that, while it does not relieve such persons from the duty of taking reasonable precautions to avoid injury by moving trains, it qualifies that duty to the extent that they may reasonably presume that the company's servants have performed their duty in ascertaining that the crossing is safe. Delaware & H. Co. v. Larnard, 161 Fed. 520, 88 C. C. A. 462; Erie R. R. Co. v. Schultz, 183 Fed. 673, 106 C. C. A. 23; Erie R. Co. v. Weber, 207 Fed. 293, 125 C. C. A. 37; Conaty v. New York, etc., Railroad, 164 Mass. 572, 42 N. E. 103; Glushing v. Sharp, 96 N. Y. 676. In Sager v. Railway Co., 70 Kan. 504, 79 Pac. 132, the court held that open gates tended by a gatekeeper of the railway company, where a public street crosses its tracks, are affirmative assurance to a traveler on the street that his safety will not be imperiled by the descending of a gate arm. In that case the plaintiff, when he approached the railway crossing, found the gates on the south side up, indicating that the tracks were clear for passage over them. When he approached the gates at the north side, one of the gates was lowered about four feet in front of him. He dodged back, and an iron prod attached to the wooden arm of the gate struck him in the groin, causing his injuries. The court said:

"His cause of action rested on the negligence of the gateman in letting down the east arm of the north gate after the two south arms of the gate and the railway tracks had been passed. The only question of contributory negligence which could possibly come into the case under the evidence before us must have relation to the knowledge of plaintiff below respecting the falling of the gate which hurt him. If he neglected to avoid the injury, when it was imminent, by stopping his horses or jumping from his buggy, provided he had

sufficient notice of the impending danger, and it was practicable to do so, he was guilty of contributory negligence. * * * We can see no element of contributory negligence in the case, unless it might have arisen at or about the time the east arm of the north gate began to descend, as before stated."

The purport of the decision was that the question of the plaintiff's contributory negligence was for the jury to decide. In Strotjost v. St. Louis Bridge Terminal Ry. Co. (Mo. App.) 181 S. W. 1082, the court held that, where gates are maintained at a crossinig of a public highway by a railroad, one in the highway may regard the opening of the gates as an invitation to him to go forward in safety. In that case the defendant lowered the gate at the other side of the crossing, so the plaintiff's horse veered to one side, overturning the wagon, resulting in injuries to the plaintiff. The court held that the defendant failed to exercise ordinary care for plaintiff's safety. In Gray v. N. Y. Cent. & H. R. R. Co., 77 App. Div. 1, 78 N. Y. Supp. 653, the defendant's gateman raised the gate and beckoned to plaintiff to come on, and just before plaintiff reached the tracks· he suddenly lowered the gate, frightening the horse as a train came from the opposite direction. The court held that whether one who drives forward after such signal, watching only the horse, the crossing, and the gateman, and not looking up the tracks for a train, view of which was substantially obstructed, was guilty of contributory negligence, was a question for the jury. The court said:

"When one of its servants has given such assurances as these of safety, it does not lie with the defendant to complain because the traveler has not been alert to discover conditions which are at variance with those which he has been told exist."

In Balto. & Ohio R. Co. v. Stumpf, 97 Md. 78, 54 Atl. 978, the court held that the fact that safety gates at a railway crossing are open is a notice to the public that the crossing is safe, and a traveler who, after looking and listening for approaching trains in either direction before he goes upon the tracks through the open gates, the watchman being absent, is not guilty of contributory negligence, as a matter of law, because he did not stop his horses, as well as look and listen, although the full view of the tracks was obstructed by standing cars. In Gerg v. Pennsylvania R. R. Co., 254 Pa. 316, 98 Atl. 960, the court held that the duty of a watchman at the railroad grade crossing requires him to know the situation as to safety at the crossing, and parties desiring to cross the track may assume and act on such knowledge, they each, however, exercising proper vigilance for their safety under the circumstances, and that the watchman's signal to cross is an invitation to every one present within a reasonable distance waiting and desiring to cross the track. In Smith v. Atlantic City R. R. Co., 66 N. J. Law, 307, 49 Atl. 547, the gates were open when plaintiff began to cross, but as she reached the end of the crossing she was struck by a descending safety gate. The gateman did not see her, but·there was no obstruction to his view of her while crossing. It was held that the question of the gateman's negligence was for the jury, and that the question of the plaintiff's contributory negligence in failing to look further at the gates as she crossed was prop-

erly submitted to the jury. In Woehrle v. Minnesota Transfer Ry. Co., 82 Minn. 165, 84 N. W. 791, 52 L. R. A. 348, it was held that open gates at the railroad crossing are an assurance of safety upon which the plaintiff might to some extent, but not entirely, rely and act, within reasonable limitations, upon the presumption that it was safe for him to go upon the crossing. The court said:

"Upon the question whether the plaintiff could have seen the train in time to have avoided the accident, or whether he looked for it, the evidence was conflicting, and sufficient to warrant the submission of the question to the jury. The sole question, then, for our decision, is whether, in view of the facts of this case, the plaintiff, in the exercise of ordinary care, was bound, as a matter of law, to stop his team and listen before driving upon the crossing. Are the inferences to be drawn from the facts doubtful? Is there no reasonable chance for fair-minded men to draw different conclusions from them? Unless it be clear that the last two questions must be answered in the negative, the main question must also receive a negative answer."

[2-5] The plaintiff, when he drove through the north gateway, the bars of which he found standing erect, had the right to assume that the defendant had discharged its duty, and that the crossing was clear for the passage of his team. He had the right to assume also that, having started to cross the tracks, the south gates would not be closed so as to imprison him thereon. When he was half way across, he saw coming at a distance of two city blocks a freight train which was approaching on the fourth track. Negligence should not be imputed to him from the mere fact that he proceeded to cross that track ahead of the approaching train. He had ample time to do so, and the evidence leaves no doubt that, had the south gates been open, he would have safely passed through, and would have incurred no risk of injury. It is not negligence per se to cross a track in front of an approaching train, when the distance and speed of the train are such as not to render the crossing unsafe. But the circumstances which complicate the present case are that, when the plaintiff was about midway of the tracks, he not only saw the approaching train, but he saw that the south gates had commenced to descend, and he heard the alarm bell. There is some conflict in the testimony as to his position at that precise point of time. He testified that his horses must have been at that time on the track on which the train was coming. There was other evidence that the horses had not quite reached that track.

On a motion for an instructed verdict, the testimony must be viewed in the light which is most favorable to the adverse party. The court below found the evidence to be that the gates began to descend before the team reached the fourth track. But if, in fact, when the gates had begun to descend, the plaintiff's horses had not quite reached the fourth track, that fact, we think, does not materially alter the situation. The question is whether it should be ruled, as a matter of law, that he was guilty of contributory negligence in proceeding as he did. What knowledge did the movement of the gates and the ringing of the bell import to him? He may have understood them as a visible and audible warning to him of danger from some source other than from the approaching train, and that they were notice to him to

proceed as speedily as possible to get off the crossing, and that the gates would not be so lowered to intercept him. He may also have relied upon the watchfulness of the man in the tower, and undoubtedly the watchman, if he, in accordance with his duty, observed the situation, could have arrested the lowering of the gates in time to permit the passage of the plaintiff's team. In Erie R. Co. v. Weber, 207 Fed. 293, 125 C. C. A. 37, the court said:

"The decedents may not unreasonably have felt that to turn back entailed as much danger as to go forward. Moreover, they had the right to take into account, in determining the question of safety, the practical invitation to cross, and the qualified assurance of safety given by the raising of the gates."

In Blount v. Grand Trunk Ry. Co., 61 Fed. 375, 9 C. C. A. 526, Judge Taft said that the attention of the driver of a horse and vehicle "is necessarily divided between the control of the horse and observation of the track, and his reliance upon the gates and the flagman must, in the nature of things, be greater than in the case of a pedestrian."

We are of the opinion that upon the evidence in the case, the question of the plaintiff's contributory negligence should have been submitted to the jury. In the situation in which the plaintiff was placed, and under the stress of such circumstances, we think it should not be held, as a matter of law, that the plaintiff's act in proceeding as he did with all possible speed, or his subsequent act in descending from the wagon under the excitement incident to the occasion was either the proximate or a concurring cause of his injury. One exposed to sudden danger is not chargeable with negligence simply because he does not adopt the safest course to avoid injury. Byars v. Wabash R. Co., 161 Mo. App. 692, 141 S. W. 926; Sprowles v. Morris Township, 179 Pa. 219, 36 Atl. 242; Lewis v. Long Island Railroad Co., 162 N. Y. 52, 56 N. E. 548; Kane v. Worcester Consolidated St. Ry., 182 Mass. 201, 65 N. E. 54; Pennsylvania Co. v. Stegemeier, Adm'x, 118 Ind. 305, 20 N. E. 843, 10 Am. St. Rep. 136.

The judgment is reversed, and the cause is remanded for a new trial.