# THE BALTIMORE AND OHIO RAILROAD CO. *vs.* FREDERICK STUMPF.

*Negligence—Accident at Railway Crossing—Safety Gates Open—Instructions to the Jury—Burden of Proof of Contributory Negligence —Driving on Railway Crossing Without Stopping.*

Defendant's railway tracks crossed a city street at grade and safety gates were there maintained as reqnired by the city charter.  Plaintiff drove in a wagon to the crossing and found the safety gates open, but did not see the watchman.   There were four tracks at that point and plaintiff's view of trains coming from the west was obstructed by a number of cars standing on the nearest track.   He looked and listened and perceiving no sign of an approaching train he drove on the tracks and while crossing the second one his wagon was struck by an express train from the west which he did not see or hear in time to avoid the injury. In an action to recover damages therefor, *held*, that the jury was properly instructed that it was the defendant's duty under the city charter to maintain a safety gate at the crossing and to keep it closed on the approach of trains, and if the jury found that the gate was open when plaintiff crossed the track and the injury could have been avoided if it had been closed, then there was want of ordinary care on the part of the defendant.

It is no objection to this prayer that it excludes the question of contributory negligence since the prayer does not go to the complete right of recovery and the jury could not find for the plaintiff, either under that prayer or in connection with others, unless they found that he was not guilty of contributory negligence.

This prayer is not defective as ignoring the causal connection between the failure to close the safety gates and the happening of the accident.

When the plaintiff's evidence in an action of negligence makes out a *prima facie* case of negligence on the part of the defendant and does not disclose any want of care on his own part, then the burden is on the defendant to establish plaintiff's contributory negligence, if that is relied on.   It is not in such case necessary for the plaintiff to show by affirmative proof, as a condition of the right to recover, that he did not contribute by his own negligence to the injury.

Consequently, a prayer is erroneous which instructs the jury that it is not sufficient to authorize recovery for the plaintiff to show a possibility that the accident was caused by the defendant's negligence, but he must convince the jury by evidence that the accident is more likely to have been directly caused by the negligence of the defendant, without

negligence on the part of the plaintiff directly contributing thereto, than that there was such negligence of the plaintiff directly contributing to cause said accident.

The fact that safety gates at a railway crossing are open is notice to the public that the crossing is safe, and a traveller who, after looking and listening for approaching trains, neither saw nor heard any, goes upon the tracks through the open gates, the watchman being absent, is not guilty of contributory negligence, as matter of law, because he did not stop his horses as well as look and listen, although the full view of the tracks was obstructed by standing cars.

When plaintiff drove upon a railway crossing where the safety gates were open and was injured by a passing train, a prayer is erroneous which instructs the jury that the plaintiff cannot recover if he went upon the tracks without knowing whether a train was coming or not, and the accident happened for that reason. Such prayer ignores all questions of the assurance of safety implied from the open gates, which was a fact to be considered by the jury; and it is also defective because it substitutes plaintiff's actual knowledge that no train was approaching for the exercise by him of due care to ascertain this fact, which is all that was required.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

*Plaintiff's 1st Prayer.*—If the jury find that on or about the 17th of April, 1901, the plaintiff was injured and a horse, harness and wagon, then and there the property of the plaintiff, if the jury so find, were also injured and damaged by a locomotive of the defendant whilst operated by its agents and servants; and said injuries resulted directly from the want of ordinary care and prudence on the part of the agents and servants of the defendant, and not from the want of ordinary care and prudence on the part of plaintiff directly thereto contributing, then the plaintiff is entitled to recover. (*Granted.*)

*Plaintiff's 1½ Prayer* is set forth in the opinion of the Court.

*Plaintiff's 2nd Prayer* related to the measure of damages.

*Plaintiff's 4th Prayer.*—In order to defeat a recovery in this suit on the ground of contributory negligence upon the part of the plaintiff, the burden of proof is upon the defendant to show that the plaintiff was guiltly of negligence, and that such negligence on his part directly contributed to produce the injury. (*Granted.*)

*Defendant's 1st Prayer.*—That it is not sufficient in order to recover that the plaintiff should show a possibility that the accident was caused by the defendant's negligence, but the plaintiff in order to recover must convince the jury by evidence, that the accident is more likely to have been directly caused by the negligence of the defendant without negligence on the part of the plaintiff directly contributing thereto than that there was such negligence of the plaintiff directly contributing to cause said accident. (*Refused.*)

*Defendant's 2nd Prayer.*—That if the jury shall find from the evidence that the accident would not have happened if the plaintiff had exercised reasonable and ordinary care to avoid it, then their verdict must be for the defendant. (*Granted.*)

*Defendant's 3rd Prayer.*—That even if the jury shall find that the negligence of the defendant company directly contributed to cause the accident, yet, the plaintiff is not entitled to recover if the jury shall find from the evidence that his own negligence also directly contributed thereto. (*Granted.*)

*Defendant's 4th Prayer.*—That the plaintiff was not entitled to rely upon any situation at the crossing that he knew did not exist or any mode of operating its trains by the defendant company that he knew it was not accustomed to exercise, but that it was the duty of the plaintiff to use reasonable and ordinary care to avoid any danger that he was aware of from whatever cause it might arise. (*Granted.*)                              :

*Defendant's 5th Prayer.*—That if the plaintiff when approaching the crossing saw that the defendant's safety gates were up and its watchman absent, that that fact did not in itself justify the plaintiff in going upon the track, but that it was his duty to stop, look and listen before going on the said crossing, and if the jury further find that the approach of the train could have been discovered by the plaintiff by the use of such ordinary care and diligence in time to avoid the accident, then the verdict must be for the defendant. (*Refused.*)

*Defendant's 6th Prayer.*—That if the plaintiff could by stopping, looking and listening before going on the defendant's track have known of the approach of the train in time to have

avoided the accident, and that the said plaintiff went upon the defendant's track without knowing whether a train was coming or not and the accident happened for that reason, then the said plaintiff is not entitled to recover.   (*Refused.*)

*Defendant's 7th Prayer.*—If the jury shall find from the testimony that when very close to the defendant's crossing there was a considerable space within which the plaintiff could not tell while sitting upon the wagon whether a train was coming or not, and that the plaintiff knew of this fact and drove upon the defendant's track without knowing whether or not there was a train approaching and was injured for this reason, then the plaintiff is not entitled to recover. (*Refused.*)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*W. Irvine Cross* and *Duncan K. Brent* (with whom was *Hugh L. Bond, Jr.*, on the brief), for the appellant.

The want of ordinary care and prudence mentioned in the plaintiff's first prayer was want of ordinary care and prudence from which the injuries directly resulted, and which entitled the plaintiff to recover.   The plaintiff's 1 ½ prayer therefore, told the jury that the violation of the ordinance alone if the accident could have been avoided in the absence of such violation, was a direct cause of the injury and entitled plaintiff to recover.   The prayer excludes altogether all question of contributory negligence, and gives to the violation of the ordinance an effect that it was not legally entitled to have.

The prayer is objectionable for another reason, to be found in the last four lines.

If in place of the words "the accident could have been avoided," we had had the words "the accident would not have happened," then this would have been a statement that the violation of the ordinance was a cause of the accident.   The prayer would, we think, have still been subject to the objection previously stated as ignoring contributory negligence. With the language here used, it not only ignores the question

of contributory negligence, but it ignores also the causal connection between the violation of the ordinance and the accident. To say that one thing could not have happened without the existence of another, is, generally speaking, to state that one is the cause of the other. To state that if one fact had not existed, another could have been avoided, is to state nothing at all. We could in this case substitute almost any irrelevant matter in place of the violation of the ordinance, and the statement would be just as intelligible.

Defendant believes fully that if the gates had been down the accident "could have been avoided," not because the failure to lower them was the direct cause of the accident, but because it believes the accident could have been avoided by the plaintiff whether the gates were up or down. If the numbers on the tender had been painted blue instead of yellow, the accident could have been avoided, because they had nothing to do with the accident one way or the other. This language is taken from some prayer or some dictum dealing with a case of supervening negligence; that is, a case where there has been a dangerous situation brought about by plaintiff's negligence, but an opportunity to avoid it by defendant after the situation has occurred.

In cases of that kind the whole question is whether defendant could have avoided the results of plaintiff's negligence, and the language has a clear meaning. It is a specific duty thrown upon the defendant, because of opportunity. The whole question is a question of power of one party to avoid. Applied to the present situation, and more especially with no reference to the party having the opportunity to avoid, the language is absolutely without meaning. This prayer is almost ideal as a type of what an instruction ought not to be. Analyzed carefully, it has no meaning from beginning to end, utter vacuity of idea. Taken sentence by sentence, and freed from the ordinary trammels of grammar, almost every clause has its own little perverse suggestion. The prayer is evidently put together as a sort of hash or sausage of prayers that have been held good in their place.

Plaintiff's 4th prayer is, we think, wrong. The burden of proving any fact is laid upon a party when there is a presumption against that fact. The burden of proving the lack of consideration for a promissory note will be upon the party offering to do so, because the giving of a promissory note raises a presumption of consideration. The burden of proving guilt in a criminal proceeding is laid upon the State because there is a presumption of innocence. It is an admitted state of facts that imposes or shifts a burden of proof; not evidence "tending to prove" such a state of facts. Evidence tending to prove that "A" killed "B" will not put upon "A" the burden of proving that his act was in self-defence. The prosecution, in undertaking to prove guilt, undertakes to negative self-defence. So here, there is no presumption as to the cause of this accident. There is no concession in the case establishing defendant's negligence as directly causing the accident. There has been proof of the violation of an ordinance, the neglect of a legal duty, but that cannot be decided to be the direct cause of the accident by the Court. It is not sufficient to prove negligence, but the negligence must be proven to be the direct cause. *Benedick* v. *Potts*, 88 Md. 54.

It is not shown beyond controversy nor admitted by the defendant, that the violation of the ordinance was the direct cause of this accident. The whole facts and circumstances are open to the jury and no presumption has been raised at all. It is the duty of the plaintiff to show how the accident happened, as proof that it was caused directly by negligence of the defendant. In doing this he must necessarily negative the other possible explanations. The theory of a pure accident, or the theory of plaintiff's negligence, original or contributory, are open as possible causes. He must show negligence of defendant as direct cause, and in doing so must negative negligence of the plaintiff. *P. W. & B. R. R.* v. *Stebbing*, 62 Md. 517; *Balto. Traction Co.* v. *Helms*, 84 Md. 525.

A prayer of this kind gives to the violation of the ordinance an effect to which it is not entitled. If this was a case of a passenger injured, and the accident arising "from some abnor-

mal condition in the department of actual transportation,"
(*Benedick* v. *Potts*) a prayer of this kind would be proper.    A
presumption would arise then from the plain cause of the ac-
cident that it was due to the negligence of the defendant.  This is
no such case.  It is a simple case of reciprocal duty.  A railroad
and a man driving a wagon were crossing one another, and the
duty of each was to guard against the common danger of a col-
lision.    The question of the real cause of the action was open
to the jury to the end.    One possible explanation of the acci-
dent, which it was inferentially the duty of plaintiff to negative
in tracing the accident to defendant's negligence, was by this
instruction presumed not to exist.

In defendant's first prayer the Court was asked to instruct
the jury that in order to recover, it was not sufficient for plain-
tiff to show a possibility that it occurred in the way claimed
by him, but that he must convince the jury by a preponder-
ance of testimony.    Counsel for defendant thought they had
made this a little more simple by substituting for the expres-
sion "by a preponderance of testimony," the expression "is
more likely to have been, etc."

There cannot be any doubt of the principle of law which we
have tried to invoke ; neither can there be any doubt of the
substantial usefulness in discussing a case of this kind before a
jury of an instruction of this elementary principle from the
Court.    It was especially desirable where there was a ques-
tion of a violation of an ordinance involving a claim of negli-
gence *per se*, and a distinct effort to leave the impression on
the jury that this made a case by itself.    Counsel endeavored
to secure as simple a statement of the principle as possible,
substituting for the expression "prove by a preponderance of
testimony," the words "convince the jury by evidence, that
the accident is more likely to have, etc."    The purpose of an
instruction from the Court is to convey the principle of
law to the jury and the colloquial language that a jury is sure
to understand, is preferable, if accurate, for this purpose, to
the technical terms used for convenience among lawyers them-
selves.    Counsel are entirely at loss to know why the Court
refused them the aid of an instruction of this kind.

Defendant's fifth and sixth prayers should have been granted because it is the duty of a traveller approaching a railway crossing to stop, look and listen when the view is obstructed, or any noise exists which interferes with the hearing of a train. *B. & O. R. Co.* v. *Roming*, 96 Md. 67; *Holden's case*, 93 Md. 417; *Hogeland's case*, 66 Md. 160; *Watson's case*, 91 Md. 354.

It is true, that by the defendant's second prayer, and the other like prayers which were granted, the jury was instructed that the plaintiff could not recover if he had failed to exercise reasonable and ordinary care to avoid the accident, but, we respectfully submit, that by the refusal of the defendant's fifth and sixth prayers, the Court withdrew from the jury the legal effect of his failure to stop, look and listen, and left to them to find, as a matter of fact, what effect was to be given to his failure to observe these precautions.

This, as we understand it, is a distinctly novel application of the rule as it exists in this State. For if a failure to observe the stop, look and listen rule, under the requisite circumstances is negligence *per se*, and as such, a matter of law to be ruled on by the Court, how can it be argued that there is no error in leaving this question to the jury to be passed on like any other matter of fact? Is not this exactly what the lower Court did when it refused every prayer of the defendant involving this point, thereby instructing the jury that the plaintiff's failure to stop, look and listen was not, as a matter of law, contributory negligence?

It seems to us that the lower Court in its ruling on the prayers, followed the doctrine as laid down in those States where an open gate is held to be such an assurance of safety, as will exempt a traveller from the application of the stop, look and listen rule, as announced in the Maryland decisions. A careful investigation of all these cases will show, that in the jurisdictions where the above seeming modification exists, the rule by which a traveller's conduct is measured at a crossing where there are no gates, is essentially different to that which exists in Maryland.

In *Lake Shore, &c. Co.* v. *Frantz*, 127 Pa. St. 297, the Court said: "The duty to stop, look and listen is absolute and unyielding. It is for the protection of the train and its occupants as much, or more than for that of travellers on the highway, and no amount of negligence on the part of the defendant can absolve the plaintiff from its obligation. The fact that the safety gates were up did not and could not release the plaintiff from the necessity of observing the imperative rule for all railroad crossings."

We therefore submit that as the Maryland decisions have stated the stop, look and listen rule in the most absolute and unqualified terms, and have even applied it in a case where a railroad company failed to give signals of the approach of its train as required by statute, we think it but logical that this same Court must apply the rule in this case, although the gates were up and the watchman absent. Particularly must this be so since it is shown by the evidence that a compliance with the rule would have rendered the happening of the accident absolutely impossible. This Court, in *Hogeland's case*, 66 Md. 160-161, speaks of the track in both directions being not fully in view, as emphasizing the necessity for this essential act of care. In *Holden's case*, 93 Md. 417, it says: "If there is any obstruction of the view by hill or bank, trees, or in any manner," etc. In the present case the track to the plaintiff's left was partially obstructed, in that cars standing on a siding shut out the view except the top of the smokestack over the cars.

*William Colton* and *Wm. S. Bryan, Jr.*, (with whom was *Charles B. Backman* on the brief), for the appellee.

Plaintiff's 1½ prayer is directly within the ruling in *P. W. & B. R. Co.* v. *Stebbing*, 62 Md. 517. It requires the jury to find a causal connection between the negligent act in running the locomotive and train in question in violation of the ordinance, with the safety gates elevated, and the injury complained of. The injury complained of in this case was occasioned by the running of said locomotive and cars across

Bayard street crossing with the safety gates elevated, and without any notice or warning to reasonably indicate to the plaintiff, under the conditions which prevailed at said crossing, at the time of the approach of said locomotive. In *Phila., W. & B. R. R.* v. *State, use of Gunther*, 66 Md. 510, this Court said in reference to conditions very similar to those prevailing at the time of the accident in this case, that if the plaintiff was really misled by any such act or misconduct of the flagman in charge of the crossing as was calculated to mislead a rational person in the exercise of reasonable care, under all the circumstances of the case, and that by reason of the fact that he was so misled the accident occurred, then the right of action would exist and the plaintiff would be entitled to recover. In *Balto. City Pass. Ry. Co.* v. *McDonnell*, 43 Md. 534, an ordinance of the Mayor and City Council, limiting the speed of cars within the city of Baltimore to six miles an hour, was the basis of a prayer defining ordinary care, and formed upon the theory of the 1½ prayer of the plaintiff in this case, which the Court held to be good.

It has been said by this Court that if the defendant was not conforming to the ordinances of the city, the *utmost diligence was requisite*, and it was responsible *at all hazards* for the accidents occasioned by it, unless the other party was also in fault. *B. & O. R. R. Co.* v. *Miller*, 29 Md. 261; *Owings* v. *Jones*, 9 Md. 108; *B. & O. R. R. Co.* v. *Breinig*, 25 Md. 389.

In *Beach on Contributory Negligence*, sec. 190, it is said: "An open gate is a notice of a clear track and that it is safe to cross without taking the precautions usually required to discover approaching trains, and negligence is not imputed to one who acts upon that assurance." See also *R. R.* v. *Ives*, 144 U. S. 418; *R. R.* v. *Prescott*, 59 Fed. Rep. 239; *Palmer* v. *R. R.*, 112 N. Y. 234; *Kleiber* v. *R. R.*, 14 L. R. A. 618; *Feeney* v. *R. R.*, 116 N. Y. 375; *R. R.* v. *Killips*, 88 Pa. St. 405, 411; *Chicago, Rock Isl. and Pac.* v. *Clough*, 134 Ill. 586; *Wilson* v. *Ry. Co.*, 29 Atl. R. 258; *Mo. Pac. R. Co.* v. *Hackett*, 54 Kan. 316; *Evans* v. *Lake Shore, &c., Co.*, 88 Mich. 442; *Rohde* v. *Chicago, &c., Co.*, 86 Wis. 312; *St. Louis R. Co.* v.

*Dunn,* 78 Ill. 197; *Kissinger* v. *R. Co.,* 56 N. Y. 538; *Glush-ing* v. *Sharp,* 96 N. Y. 676; *Maine* v. *Boston, &c., R. Co.,* 80 Me. 430; *Dolan* v. *R. Co.,* 71 N. Y. 285; *Whelan* v. *R. R.,* 38 Fed. Rep. 15; *R. R.* v. *Stagmeier,* 118 Ind. 305; *R. R.* v. *Schnider,* 45 Ohio St. 678; *R. R.* v. *Hutchinson,* 120 Ill. 587; *Stapley et al.* v. *London, etc., R. R.,* L. R. 1 Exc. 21; *Railroad* v. *Wanless,* L. R. 7 H. L. 12.

Defendant's first prayer is almost unintelligible and was misleading. But this prayer together with its fifth, sixth and seventh were in effect fully covered by its second, third and fourth prayers which were granted.

PEARCE, J., delivered the opinion of the Court.

At the trial of this case two exceptions were taken by the defendant to the admission of evidence, but these were abandoned at the argument in this Court, and the only remaining exception is to the ruling on the prayers.

On April 17th, 1901, the plaintiff was driving a grocery wagon drawn by a quiet horse, on Bayard street in the city of Baltimore, at a point where the tracks of the Baltimore and Ohio R. R. Co. cross said street at grade, and where safety gates are maintained by the Railroad Co. as required by sec. 791 of the city charter. There are four tracks at that point, and the plaintiff's view of trains approaching from the west was obstructed for about six hundred feet from the crossing by a row of coal cars standing upon one of these tracks. He testified that as he drew near the crossing he saw the safety gates were open, but he did not see the watchman ; that he looked four times both ways, and saw no train or engine approaching, nor any smoke or other sign of an engine ; that he listened and heard no bell nor whistle nor any sound of any approaching train, and kept on till he was on the crossing; that while crossing the second track, he was struck by an express train coming from Washington which he could not see or hear until just before it struck him, destroying his wagon and injuring him, for which the jury awarded him $1,800.

The plaintiff offered four prayers all of which were granted,

and the defendant offered seven, of which the second, third and fourth were granted, and all the others were refused. The plaintiff's first and second prayers have been repeatedly sanctioned by this Court where the case is allowed to go to the jury, and need not be again considered. But it was very earnestly argued that there was error in granting the plaintiff's one and a-half, and fourth prayers, and refusing the defendant's first, fifth, sixth and seventh prayers.

By the plaintiff's first prayer, and by defendant's second, third and fourth prayers, the finding of the two essential elements of recovery in any case of this character, namely, the negligence of defendant directly causing the injuries sustained, and the absence of negligence on the part of the plaintiff directly contributing thereto, was fully and fairly submitted to the jury.

The plaintiff's one and a-half prayer told the jury that if they found the crossing in question was a grade crossing, then under the section of the charter offered in evidence, it was defendant's duty to maintain a safety gate at that point and to keep the same closed on the approach of every train or locomotive until the same has fully passed, and if they found said gate was maintained, but was open and not closed on April 17th, 1901, on the approach of a train and locomotive, and that plaintiff was struck and injured thereby while crossing said track, and that if said gate had been closed on the approach, and during the passage of said train, the accident could have been avoided, then there was a want of ordinary care on the part of the defendant as mentioned in the plaintiff's first prayer.

The defendant objects to this prayer, first, that it excludes the question of contributory negligence, and second, that it ignores the causal connection between the violation of sec. 791 and the happening of the accident. The first objection might be valid if the prayer went to the right of recovery, but it does not so conclude. It merely declares that certain facts, if found by the jury, constitute want of ordinary care, and identifies that want of ordinary care, as the same which must have caused the injury complained of, without any contribu-

tion thereto from any want of ordinary care on the part of the plaintiff. It cannot be questioned that the violation of such a requirement is negligence, though not causing injury; and although the jury might find all the facts under that instruction, which the Court declared would establish want of ordinary care on the part of the defendant, yet they could not either under that instruction alone, or in connection with the first prayer, to which it referred, find for the plaintiff, unless they also found he was not guilty of contributory negligence. Nor does it ignore the causal connection between the violation of sec. 791 and the happening of the accident. The criticism to that effect, is a mere verbal criticism upon which grammarians might differ, but to practical men, not concerned about nice discrimination in words, this expression could not be understood otherwise than as meaning that the accident would not have happened, and would not suggest any question of supervening negligence as argued by defendant's counsel. This prayer is a nearly literal reproduction of the plaintiff's second prayer in *McDonnell's case*, 43 Md. 537, and in approving it JUDGE GRASON said: "The defendant was certainly guilty of negligence in so running its cars, if the jury believe from the evidence that the accident could have been avoided if the car had not been running at a greater speed than was allowable under the ordinance." And these words were used in reply to the exact argument made by counsel in the present case as to supervening negligence. We find no error in granting this prayer, which we think is quite within the ruling in *Stebbin's case*, 62 Md. 517.

The plaintiff's fourth prayer, as to the burden of proving contributory negligence, is the same approved in *Hogeland's case*, 66 Md. 162, and there said to have been repeatedly sanctioned. A late and interesting consideration of this question is found in *Tucker* v. *State, use of Johnson*, 89 Md. 471, where death resulted from a pistol shot fired in alleged necessary defense of defendant's servant. The Court said on page 480: "It has been held over and over again in this State that if a suit is brought under this statute for the negligence of the de-

fendant, the burden is on the plaintiff to prove the negligence, yet if the plaintiff's testimony makes out a *prima facie* case of negligence, and does not disclose want of care on the part of the deceased, *the burden is on the defendant* to establish contributory negligence, if that is relied on.   *Frech's case*, 39 Md. 574; *Hauer's case*, 60 Md. 462; *Steever's case*, 70 Md. 75; and many others that might be cited.   So, although by the terms of the statute, the plaintiff in such cases can only recover by proving that the death of the person was caused by the negligence or default of the defendant, the defendant has the burden cast on him to prove that the proximate cause of the injury was the negligence of the deceased, and that too, notwithstanding the plaintiff is required to prove, as part of his case, that the negligence of the deceased did not directly contribute to the injury.   The latter may be satisfied by the presumption of due care and the known and ordinary disposition of men to guard themselves against danger, when the plaintiff's testimony as to the accident does not show affirmatively that the deceased did directly contribute to the injury."   In opposition to this clear and logical statement of the law upon this point, the defendant's counsel in his brief says : "It is the duty of the plaintiff to show how the accident happened, as proof that it was caused by the negligence of defendant. In doing this he must necessarily negative the other possible explanations.   The theory of pure accident, or the theory of plaintiff's negligence, original or contributory, are open as possible causes.   He must show negligence of defendant as direct cause, and in doing so must negative negligence of the plaintiff."

To sustain this argument he cites this passage from *Balt. Traction Co.* v. *Helms*, 84 Md. 525: " By the well-settled law applicable to the class of cases to which this belongs, it is not enough for the plaintiff to prove the negligence of the defendant, and the injury which followed, but he is bound also to establish by satisfactory proof, before he can recover, that he was himself free from negligence and exercised ordinary care to avoid the consequences of defendant's negligence. "   How-

ever that language might have been regarded, if it stood apart from any qualifying language, and if that case had been the first in this Court dealing with this rule, it is impossible to suppose that the learned and careful Judge who delivered that opinion, intended to overrule, without even mentioning, the various cases in which it had been held that the burden of proof in this regard is on the defendant; and it is perfectly apparent from the very next sentence in that opinion, that the defendant's counsel in this case has misconceived the meaning of the language cited, for the Court goes on to say, " The right to recover depends upon two distinct propositions of fact; first, the negligence of defendant, and secondly, the exercise of due and ordinary care by the plaintiff, and if he fail to prove negligence on the part of the defendant, *or if it appears from his own evidence that he was guilty of negligence directly contributing to the injury*, he cannot recover." In the face of all the authorities in this State, we cannot perceive how the correctness of this prayer can be seriously questioned.

The defendant's first prayer is an attempt to impose by ingenious indirection upon the plaintiff, the burden of proving contributory negligence, and is wholly irreconcilable with plaintiff's fourth prayer. The first three lines of defendant's first prayer assert an admitted proposition, that the negligence of defendant causing the injury must be a legitimate deduction or inference from established facts, and not a mere speculation or conjecture, which is never the equivalent of proof. But the prayer then proceeds to assert that the plaintiff must convince the jury by evidence that it is more likely that there was, than that there was not, contributory negligence on plaintiff's part; thus practically reversing the established rule as to the burden of proof upon this point, and permitting contributory negligence to be founded upon speculation or conjecture, while denying resort to this means for establishing defendant's negligence. This is not only unreasonable and without authority, but in direct disregard of *Geiss' case*, 31 Md. 367; where a prayer in a case of this character was disapproved, because it required " affirmative proof, as a condition to the right to re-

cover, that the deceased did not by his own neglect or want of care contribute to the accident." These objections are fatal to this prayer.

The defendant's fifth prayer which was refused, asked that the jury be instructed that the fact that the safety gates were open and the gateman absent, did not in itself justify the plaintiff in going upon the track, but that it was his duty to *stop*, look, and listen before going on the track. As it is a conceded fact that the plaintiff did not *stop*, though he did look and listen, this prayer, if granted would, in effect, have taken the case from the jury. This is the first case in this Court in which it has been sought to apply the rule of stop, look and listen, arbitrarily, to a case where safety gates required by law to be kept closed on the approach of a train were open as the traveller approached the crossing, and we have given it careful consideration. It may be conceded unhesitatingly that the mere fact that such gates are open cannot, *alone, and in all cases*, justify a traveler in going upon the track at the crossing, and that there are cases in which it may be the traveller's duty to make independent observation by *stopping*, as well as by looking and listening, before doing so. The case of *Pa. R. R.* v. *Pfeulb*, 60 N. J. Law, 278, is such a case. There the proof was that though the gates were up as plaintiff approached, an east bound train was then passing, and he waited until it passed, and then went upon the track and was struck by a train coming in the opposite direction, which he could not have failed to see if he had looked; and the Court properly said: " He knew the gateman had neglected his duty and that he could not rely with confidence upon the fact that the gates were up." So also, if one seeing the gates up, but also seeing an approaching train near at hand, should attempt to cross before it, merely because the gates were open, or because he chose to risk the experiment, the open gate could not relieve him of the consequences of his own want of due and ordinary care.

None of the cases in this Court in which the failure to stop, look, and listen before crossing a railroad track has been de-

clared negligence *per se*, from *Hogeland's case* in 66 Md. 149, to *Roming's case*, 96 Md. 67, have involved the question of safety gates, and none of them have announced any principle which would either require or, in our opinion, justify the application of the rule invoked to such a case as the present. In *Roming's case* the B. & O. R. R. Co. voluntarily maintained a gate at the crossing in question, but it was operated only in the day time and did not enter into the consideration of that case.

The rule has been so applied in Pennsylvania but the great weight of authority in England and America is the other way.

In *North Eastern R. W.* v. *Wanless*, 7 Eng. and Irish Appeals, 12, LORD CAIRNS held where it was the duty of the railway to keep the gates closed when any train is approaching, that the fact that they were open "amounted to a statement and notice to the public that the line at that time was safe for crossing, and was evidence of negligence to go to the jury;" and the same was held in *Stapley* v. *London and Brigton Ry. Co.*, L. R. 1 Exch. 21; and in *Lunt* v. *London and South Western Ry. Co.*, L. R. 1 Q. B. 277. In the last case, LORD BLACKBURN observed: "It could make no difference whether the gate keeper expresses that the road is safe, by opening the gate, or by words or gestures." This is the view held in the following cases in this country: *Grand Trunk Railway* v. *Ives*, 144 U. S. 408; *Dolan* v. *Del. and Hudson Canal Co.*, 71 N. Y. 288; *Glushing* v. *Sharp*, 96 N. Y. 667; *Palmer* v. *N. Y. Cent. R. R.*, 112 N. Y. 234; *Chicago and Rock Island R. Co.* v. *Clough*, 134 Ill. 586; *Rhode* v. *Chicago and North Western R. R.*, 86 Wis. 312; *Evans* v. *Lake Shore and Mich. Sou. R. R.*, 88 Mich. 442; *Wilson* v. *N. Y. and N. H. R. R.*, 29 At. Rep. 258, and in many other cases which might be cited. In *Glushing* v. *Sharp, supra*, the Court said: "The open gate was a *substantial assurance of safety*, just as significant as if the gateman had beckoned or invited him to come on, and that *an ordinarily prudent man* would not be influenced by it, is against all human experience." In *Dolan* v. *Del. & Hudson Canal Co.*, *supra*, it was held that the negligence of a flagman to give

warning and properly to discharge his duty, or in absenting himself from his post, even where no law required the keeping of a flagman, is imputable to the company, and that where plaintiff's evidence tended to show that he looked and listened for the usual signals and evidences of danger, and neither saw nor heard any, and where obstructions by cars standing on the tracks prevented his seeing and hearing the approaching train, that it could not be held as a matter of law that it was the plaintiff's duty to have stopped his horses and gone forward to see if a train was approaching.    Chief Justice Church said, "The vigilance which the evidence tended to show that the plaintiff exercised is all that has been required as matter of law.    There may be cases where a higher degree of vigilance might be regarded as proper, but those are exceptional cases which must be left to the jury on the facts."

In *Wilson* v. *N. Y. & N. H. R. R.*, 29 At. Rep. 258 (R. I.) Chief Justice Matterson said, "The word, *invitation*, though sometimes used in the opinions of learned Courts, evidently was designed to mean only that the leaving open of the gates amounted to an implied assurance that the track might be safely crossed.    Thus understood, the authorities are numerous (the only cases to the contrary that have come to our attention being cases in Pennsylvania) that open gates, or the absence of the usual signals of an approaching train or engine are implied assurances that no train or engine is approaching the crossing with intent to cross the street, upon which travellers on the street have a right to rely, and that if a traveller on the street be injured while crossing the railroad in such circumstances, the question whether he was guilty of contributory negligence is for the jury."

In *Evans* v. *Lake Shore R. R.*, *supra*, the Court said: "The public have a right to presume in the absence of *knowledge* to the contrary, that the gatemen are properly discharging their duty, and are *not negligent* in acting upon the presumption that they are not exposed to a danger which could only arise from a disregard of such duties."    In *Palmer* v. *N. Y. Cent. R. R.*, 112 N. Y. 241, the Court said: "When, there-

fore, he moves on upon the track under an assurance of safety from those owning it, and from their servants, whose special duty it is to keep their attention fixed upon it, and who have within their power the means of avoiding the infliction of injury, and whose business it is to use them so as to prevent danger, it is for the jury to say whether the traveler exercised that ordinary care and prudence which under the circumstances it would be natural to expect."

Even in Pennsylvania, where, as we have seen the traveller is held to stricter account than in any other State, in the recent case of *Roberts* v. *Del. and Hudson Canal Co.*, 177 Pa. St. 190, the following instruction was held correct. "Safety gates which should be closed in case of danger, if standing open, are an invitation to the traveler on the highway to cross, and while this fact does not relieve him from the duty of exercising care, it is a fact for the consideration of the jury in determining whether he exercised care according to the circumstances." We have thus, perhaps at undue length, endeavored to extract from some of the leading cases, the views of the Courts upon the point under consideration, and while we have not been furnished with, and have not found, any Maryland case involving the exact question, the principle deduced from the cases we have cited, seems to be plainly recognized in *Phil. Wilm. & Balt. R. R.* v. *State, use of Gunther*, 66 Md. 510, in which JUDGE ALVEY said: "If the equitable plaintiff was really misled by any such misconduct of the flagman as was calculated to mislead a rational person, in the exercise of reasonable care, under all the circumstances of the case, and that by reason of the fact that he was so misled, the accident occurred, then the right of action would exist, and the plaintiff would be entitled to recover."

For the reasons that we have stated we think this prayer was properly rejected.

The defendant's sixth and seventh prayers both ignore all question of the assurance of safety implied in the open gates which was a fact necessary to be considered by the jury; but apart from this objection they are defective in declaring that

if the plaintiff went on the track without *knowing* whether a train was coming or not, and the accident happened for that reason, then the plaintiff could not recover.

He knew the gates were required to be closed when a train or engine was approaching, and if he *knew* a train or engine was approaching, he knew the open gates were not then an assurance of safety, and under such circumstances if he were injured, his own negligence would defeat his recovery.    On the other hand, if he in fact actually knew a train or engine was not approaching, there would be no source of danger, and no occasion for vigilance or caution.    These prayers substitute, as the test of recovery, actual *knowledge* that no train or engine was approaching, for the due care and caution required by the law in endeavoring to ascertain this fact.    The right of recovery does not depend upon the accuracy of the plaintiff's information as to the approach of the train, but upon the measure of care and caution exercised to obtain accurate information, under all the circumstances of the case.

We think the whole law of the case was fully covered by the granted prayers and the judgment will be affirmed.

*Judgment affirmed with costs above and below.*

(Decided April 1st, 1903.)