# FELIX NEGRETTI *v.* BALTIMORE & OHIO RAILROAD COMPANY

[No. 49, October Term, 1940.]

*Decided December 17th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Everett L. Buckmaster* and *Dulany Foster,* with whom were *Charles B. Hoffman, Leonard Weinberg* and *Weinberg & Green* on the brief, for the appellant.

*John S. Stanley* and *Kenneth H. Ekin,* with whom were *Allen S. Bowie* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

Negretti, the plaintiff, appeals from a judgment on a verdict directed for the railroad company in a suit against it for damages from a collision of Negretti's automobile, driven by him, with one of the box cars in a train passing at a grade crossing.

The crossing is on a portion of Chesapeake Avenue extending north and south in the Brooklyn section of Baltimore City. Chesapeake Avenue is the highway which extends between the southerly end of the Hanover Street bridge and Fairfield, to the east, on the Patapsco River, and is the ordinary avenue for travel between the two points. The highway at the crossing is similar to a country road in respect to the roadbed and the surroundings. The crossing has never had safety gates, or signals of any kind, except warning signs along the highway approaches. The accident occurred early in the morning of December 31st, 1936, as Negretti was driving home from his work in a night shift at the Maryland Dry Dock Company's plant at Fairfield. He lived on Edmondson Avenue, in the northern part of Baltimore, and had been employed at the Dry Dock twelve or thirteen months before the accident. During all that time except on the last day he had been going to and from his work more frequently by street car, but sometimes, once or twice a month, got a ride in cars of other workmen, and then usually passed over Chesapeake Avenue and the crossing. He had been a licensed driver since 1932 or 1933, but had been without a car during the earlier part of the time and until he bought one on the day before his accident.

On that night there was a severe fog at the place, lifting at times, but at its densest so thick that only about ten feet of the road ahead could be seen, and drivers steered by sight of the grass or a rail beside the roadway. Sometimes, Negretti testified, he had to come to a stop because he could not see ahead. He and others of the same shift used dimmers on their lights for better vision.

On leaving the work, the men first stopped at a nearby restaurant, then drove off, Castle, the foreman, leading and Negretti following him. On reaching the tracks Castle practically stopped before crossing, but it does not appear that Negretti saw him at that point or was near. Castle was not struck and neither saw nor heard a train. He could not see the warning signs along the road because, with the dimmers, he had too little light from his car. He saw no engine headlight, and heard no whistle. When he crossed he felt the bumps from the tracks, which are in what is described as a comparatively smooth crossing, "smooth for a railroad." A police officer, too, testified for the plaintiff that bumps were felt as an automobile crossed the tracks. The railway there has three tracks, or six rails, of a total width, measuring from the southernmost rail to the northernmost, perpendicularly, thirty-eight feet eleven inches, but the line does not cross the highway at a right angle, and measuring along the highway the crossing may be said to cover forty-five feet.

Negretti does not remember whether he watched the grass edge immediately before reaching the crossing, as he had done previously. Apparently, had he done so, he would have seen the end of it and a ditch at the near side of the tracks shown by a photograph placed in evidence by agreement. He testified that he was not able to locate this crossing because along the way there were sidings to be crossed, too; and he did not see any warning signs or lights. He approached at a speed of twelve or fifteen miles an hour, and at that moment a freight train was crossing. Of its presence he became aware only when he was about eight and a half feet away as he sat in his seat, with the front of his car about four feet away. It was the tenth car in the train with which he collided, and the engine had then passed beyond about 600 feet distant.

At the conclusion of the plaintiff's evidence to this effect, the court granted a prayer of the defendant for direction of a verdict in its favor because the plaintiff by

his own negligence contributed to the happening of the accident. Another prayer, for direction on the ground that there was no legally sufficient evidence of negligence on the railroad company's part, was not ruled on. The contention in support of the latter prayer is that the only possible omission of duty on the defendant's part was in failing to have at the crossing safety gates, which were required by law for all grade crossings within the city, but that gates are only precautions against approaching trains, the train itself, when on the crossing, being a sufficient warning of the danger. *Balto. & O. R. Co. v. State, use of Black,* 107 Md. 642, 59 A. 439, 72 A. 340; *Ullrich v. Columbia & Cowlitz R. Co.,* 189 Wash. 668, 66 P. 2nd 853. It would appear from the plaintiff's testimony that if gates had been there he must have broken them, although not perhaps to reach the train. The sufficiency of evidence of negligence of the defendant need not be considered, however, because if it existed there was also, in the opinion of the court, contributory negligence on the plaintiff's part which, under the law must prevent his recovering.

He knew that he was driving along a road crossed by the tracks, yet drove on blindly. The fog did not relieve him of care; it required increased care of him, as he seems to have realized, for he had been stopping when he could not see ahead at all. With his vision shut off as he describes, due care required that he take other measures to avoid the danger. *Colgate & Co. v. United Rwys. & Elec. Co.,* 156 Md. 472, 475, 144 A. 519. The tracks could be seen, or at least the nearness of the crossing could be perceived, for Castle, in the same fog, knew when he was there and practically stopped before crossing. Had Negretti been watchful he must have noticed the end of the grass border and the ditch at the side of the tracks. He must have felt the first bumps of the rails, twenty-five feet before he reached the train. But above all this, it seems he must have heard the train, had his attention been at all alert, for it is notorious that a moving freight train makes a great noise in its passage. And "he was bound

to be awake and alive for his own protection." *Butler v. Gettysburg & H. R. Co.,* 126 Pa. 160, 19 A. 37.

Cases of collisions between automobiles and trains standing on grade crossings or passing over them have been numerous in other jurisdictions, and the great majority of courts have considered that persons driving into the sides of trains could not, as matter of law, recover, even when there were some negligent omissions of duty by the railroad companies. The court has been referred to a review of all such cases, in the years shortly before and up to the year 1938, in *Reines v. Chicago, etc., R. Co.,* 195 Wash. 146, 80 P. 2nd 406, 409, a case on facts closely similar to those in the case at bar. On November 7th, 1936, a few weeks before this accident, a Ford car was driven in foggy weather, at 11:20 P. M., into a freight on a crossing, and contributory negligence was found as a matter of law. The Washington court cited twenty cases "in which the crossing was somewhat or completely obscured by foggy, rainy, or dusty weather, or for some other reason was not out in the open," but in all of which contributory negligence was found as matter of law. And see note 56 *A. L. R.* 1115; 2 *Elliott, Railroads,* (3rd Ed.) sec. 1676.

Cases of collision with unlighted and unseen cars or objects in the highways at night do not furnish us with precedents because the cars or objects in those cases, are where they are not expected to be. A train on a known railroad crossing should be expected. See *Robert v. Wells,* 170 Md. 367, 184 A. 923; *Mayor and City Council of Baltimore v. Thompson,* 171 Md. 460, 189 A. 822.

In the case of *Caroline County Commrs. v. Beulah,* 153 Md. 221, 228, 138 A. 25, also cited, the driver, on a county road in a fog at night, struck a tree lying across the road unseen, although he had seen it during the day while driving in the opposite direction; and it was held that he could not be found guilty of contributory negligence as a matter of law. It was his right to drive ahead on the road; he was not required to abandon his travel, or seek out another way, nothwithstanding his knowledge that

the tree might still be there, and he could not see it if it was. He was required merely to exercise ordinary care to see it, and it was considered by the court that the jury might find he had done his best. This case, however, differs in that the danger must have been seen or heard, in the exercise of ordinary care, before the collision.

It seems clear from the evidence that the unfortunate plaintiff in this case had allowed his attention to be distracted for the time being. He was not looking and listening. The fact that he had not driven a car for a long time may have caused him to concentrate his attention on other conditions. Whatever the explanation of his omission, the consequences which fell from it were severe, but under the law they cannot form the subject of recovery, and the action of the trial court in directing the verdict was correct.

*Judgment affirmed, with costs.*