# FRANK BUCZKOWSKI *v.* CANTON RAILROAD COMPANY
## COMPANY
## DAVID A. FRIEND *v.* SAME

[Nos. 13 and 14, January Term, 1943.]

*Decided February 11, 1943.*

378

The causes were argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Marion A. Figinski* for the appellant in both cases.

*Edmund P. Dandridge, Jr.,* and *Norwood B. Orrick,* with whom were *J. Crossan Cooker, Jr.,* and *Venable, Baetjer & Howard* on the brief, for. the appellee in both cases.

MARBURY, J., delivered the opinion of the Court.

These are appeals from judgments in favor of the appellee upon verdicts rendered by the jury in accordance with instructions of the trial court. The cases arise out of a collision at a railroad crossing in the City of Baltimore between an automobile, driven by the appellant Friend, in which the appellant Buczkowski was riding as a passenger, and a car of the appellee railroad company, which was standing motionless across the highway. In the driver's case, prayers instructing a verdict for the defendant were granted on the ground of failure of any showing of primary negligence, and also on the ground of contributory negligence. In the case of the passenger, the primary negligence prayer only was the basis for the directed verdict. The question whether there was any primary negligence, or negligence directly contributing to the accident on the part of the defendant, determined both cases below. The question of contributory negligence affects only the driver's case, and in that case alone was an additional ground for the directed verdict. We consider, therefore, first the question of the primary negligence of the defendant.

There is little if any dispute as to the facts. The appellant Friend was employed at the Glenn L. Martin Air-

craft Plant, and was returning home in his automobile sometime after 2 A. M. on the morning of October 2, 1941, having with him in the car the appellant Buczkowski. They were driving east on the Eastern Avenue Road and at a point about 240 feet west of Kane Street, they struck an object which was obstructing Eastern Avenue without any light or other warning signals. This turned out to be a box car on the track of the appellee at the end of a train, which was there being operated and engaged in switching cars. The box car was standing still at the time of the impact. There is a grade down to the track. It is a feeder line, used by the railroad to deliver and take away freight cars from various industries. The driver of the car said that his lights were on the road coming down the grade, and as soon as they flashed on the car, he put his brakes on and tried to cut to the side, but it was too late. There is testimony that the flagman of the train was on the other side of the box car flagging the traffic coming east, and that there was no one on the side on which the appellant approached. There was a street light near the crossing, and crossed signs on the road on each side of the track warning of the crossing. The night was dark, but there do not seem to have been any unusual conditions, such as fog or rain. There were no safety gates at the crossing, although this is required by the local law of Baltimore City for grade crossings. Code, Public Local Laws, 1930, Art. 4, Sec. 791.

It has been been frequently decided by this court that the violation of a statute will not support an action for damages on account of an injury sustained, unless such violation is the proximate cause of the injury. The rule was clearly and forcibly stated by Chief Judge Alvey in the case of *Pennsylvania, W. & B. R. Co. v. Stebbing*, 62 Md. 504. The court in that case was considering a prayer which declared that it was negligence *per se* for the railroad to run its cars through the town of Port Deposit at a rate of speed exceeding ten miles an hour,

under the terms of a town ordinance to that effect. Judge Alvey said: "This ordinance is general, and is for the protection of the public generally; but the neglect or disregard of the general duty .thereby imposed for the protection of every one, can never become the foundation of a mere personal right of action, until the individual complaining is shown to have been placed in postion that gave him particular occasion and right to insist upon the performance of the duty to himself personally. The duty being due to the public, composed of individual persons, each person specially injured by the breach of duty thus imposed becomes entitled to compensation for such injury. But he must have been in a position to entitle him to the protection that the ordinance was designed to afford, and he must show how and under what circumstances the duty arose to him personally, and how it was violated by the negligence of the defendant to his injury. In other words, it must appear that the negligent breach of the duty imposed by the ordinance was the direct and proximate cause of the injury complained of, and that such injury would not have occurred but for the violation of that duty. *Hayes v. Michigan Cent. R. Co.,* 111 U. S. 228, 240, 241 (4 *S. Ct.* 369); *Pennsylvania Co. v. Hensil,* 70 Ind. 569 (36 *Am. Rep.* 188); *Cooley on Torts,* 657-8." See also the recent case of *People's Service Drug Stores, Inc. v. Somerville,* 161 Md. 662, 158 A. 12, and cases there cited.

The failure to have safety gates at this crossing does not seem to have been the proximate cause of the accident. The cause was the failure to see the box car, which was much larger, and had a much higher visibility than safety gates would have had. The latter are chiefly valuable in warning drivers on the highway of an approaching train, and not in giving notice of a train already on or crossing the highway, which of itself gives better warning than the gates. *Dolan v. Bremner,* 220 Iowa 1143, 263 N. W. 798; *Olson v. Chicago, Etc., R. Co.,* 193 Minn. 533, 259 N. W. 70.

No other applicable statutes or ordinances have been called to our attention, and we therefore have presented the question whether the presence of a box car standing on a grade crossing of a highway, unlighted on a dark night, is itself sufficient warning of its presence, or whether the railroad company is negligent in not giving some further signal. The appellant cites the cases of *Baltimore & O. Railroad v. State, Use of Miller*, 29 Md. 252, 96 *Am. Dec.* 528; *Textor v. B. & O.Railroad Co.*, 59 Md. 63, 43 *Am. Rep.* 540; *Baltimore & O. Railroad v. Stumpf*, 97 Md. 78, 54 A. 978; *Jenkins v. B. & O. Railroad Co.*, 98 Md. 402, 56 A. 966; *Northern Central Railway Co. v. State, Use of Gilmore*, 100 Md. 404, 60 A. 19, 3 *Ann. Cas.* 445, 108 *Am. St. Rep.* 439; *State, Use of Chairs v. Norfolk & Western Railway Co.*, 151 Md. 679, 135 A. 827; and *State, Use of Packmayr v. B. & O. Railroad Co.*, 157 Md. 256, 145 A. 611. An examination of these cases, however, discloses that they were cases where the plaintiffs were struck by trains at grade crossings where insufficient notice had been given, and the plaintiffs had been induced to cross and had been struck by moving trains. They are not applicable to a situation where, as in the cases before us, the plaintiffs were moving and the train of the railroad was stationary. Our attention has been called to only one such case in this court, recently decided, *Negretti v. B. & O. Railroad Co.*, 179 Md. 30, 16 A. 2d 902. In that case a worker in a night shift at a plant was driving home from his work, just as in the cases before us. There was a dense fog. When he approached a grade crossing, a train was crossing the highway. He did not see it and collided with one of the cars. The trial court directed a verdict for the defendant on the ground of contributory negligence. There was also a prayer, as in the cases before us, for a directed verdict for failure to prove primary negligence. That prayer was not acted on below, and although it was discussed in the opinion, the case was necessarily decided on the contributory negligence prayer.

There have been many decisions·in other jurisdictions on the question before us. A discussion of these decisions will be found in 56 *A. L. R.* 1114, 99 *A. L. R.* 1454, and in the case of *Reines v. Chicago, Etc., R. R. Co.*, 195 Wash. 146, 80 P. 2d 406. The court in that case cites nine cases from five States—South Carolina, Maine, Missouri, Georgia and Texas—as holding that it was for a jury to determine whether or not under all the circumstances the railroad company had been negligent. In twenty-seven other jurisdictions, it is stated that recovery was denied in such cases as a matter of law. The Washington court aligned itself with the majority. Another Washington case immediately following the Reines case is quite like the case at bar in some of its aspects. In that case, the same finding was made, of no negligence on the part of the railroad company. *Webb v. Oregon-Washington Railroad, Etc., Co.*, 195 Wash. 155, 80 P. 2d 409.

The point of view of the so-called minority States is that whether an obstruction across the highway may be the proximate cause of an injury depends on the circumstances of each individual case. Their theory is that if the employees of the railroad, in the exercise of reasonable care, should have known that on account of the conditions at the time, the cars upon the crossing were such an obstruction that people driving along the highway in the exercise of due care would be liable to come in collision with them, then the railroad company should be charged with negligence. *Richard v. Maine Central Railroad Co.*, 132 Me. 197, 168 A. 811; *Trask v. Boston & Maine R. R.*, 219 Mass. 410, 106 N. E. 1022. In a later Maine case, the court set the verdict aside because there was no negligence under what it said was the proper test, namely, "whether the railway employees, in the exercise of proper care, should recognize danger of collision with a highway vehicle operated by a man of ordinary prudence." *Plante v. Canadian National Railway*, Maine,, 23 A. 2d 814, 817. The point of view of

the other courts, called the majority by the Supreme Court of Washington, is summed up in the case of *Dolan v. Bremner*, 220 Iowa 1143, 263 N. W. 798, cited with approval by the Circuit Court of Appeals for the Eighth Circuit administering the Iowa law in the case of *Thompson v. Stevens*, 106 F. 2d 839. The Iowa court said (220 Iowa 1143, 263 N. W. 800) : "Railroad tracks necessarily cross public highways, and it is necessary that trains at times be stopped upon such public highway crossings. When this is done and the railroad company is making reasonable and legitimate use of such crossing, the presence of the train itself is sufficient warning to anyone using the highway, and there is no duty upon the part of the railroad company to anticipate that one using the highway will not see such train and be apprised of its presence as fully as he would be if other signs or warnings were used." The Supreme Court of Ohio in the case of *Capelle v. B. & O. Railroad Co.*, 136 Ohio St. 203, 24 N. E. 2d 822, 824, says that the recent decisions, naming them, expressed the modern view and the weight of authority and sustained "the general proposition that a person who drives, or is driven into, the side of a train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company for injuries received; and the existence of weather conditions tending to diminish visibility does not alter the rule." An earlier Ohio case, *Reed v. Erie Railway Co.*, 134 Ohio St. 31, 15 N. E. 2d 637, 639, said: "Where a railroad train is rightfully occupying its track at a highway intersection, the presence of the train is adequate notice to a traveler that the crossing is preempted. Consequently, no additional signs, signals or warnings are required of the railroad company, and negligence cannot be imputed to it by reason of their absence."

It does not seem to us that there is so clear a line of demarcation between the States as the Washington court

found. It would serve no useful purpose to quote from or distinguish all of the cases. At the time of the Washington decision in 1938, there were said to have been seventy-five during the past nine years. The Maine rule set out above is taken from the leading Massachusetts case, a State placed in the opposite category from Maine. The early Ohio case above quoted (*Reed v. Erie Railway Co., supra*) has no qualification. But the later case (*Capelle v. B. & O. Railroad Co., supra*) includes the words "in the absence of special circumstances," which seems to bring it within the same category as the Maine and Massachusetts cases.

On the whole, we are inclined to the view that no absolute and unqualified rule should be laid down. The circumstances of each case are different. In some cases conditions may be so unusual that even in the exercise of due care, a traveler might collide with a standing train. Such cases may be rare, but they can occur. Where it is or should be apparent to the employees of the railroad that a collision might occur without fault of the traveler, a jury should be permitted to decide whether the railroad was negligent. In the absence of any unusual circumstances, the fact that a railroad train is standing on a crossing where it has a right to be is not evidence of negligence, and in many of the cases this has been held to be so even though the weather is bad and the visibility poor.

In the cases before us, there was nothing unusual about the weather, although had there been, we do not hold that this would have constituted a special or unusual circumstance putting the railroad on notice. There was a down grade, but it does not appear that it was impossible for an approaching driver to see the train. There were no circumstances from which it could be justly held that the railroad was negligent in not providing notice other than the presence of the car itself. We find that there was, therefore, no evidence of negligence on the part of the railroad company directly con-

tributing to the accident, and that the action of the lower court in withdrawing the cases from the jury on this ground was correct.

In view of our decision on this question, it becomes unnecessary to pass upon the contributory negligence prayer in the case of the driver.

*Judgments affirmed, with costs.*