## LORD *v.* THE PENNSYLVANIA RAILROAD COMPANY

[No. 331, September Term, 1967.]

*Decided October 11, 1968.*

114

The cause was argued before HAMMOND, C. J., and MAR-
BURY, McWILLIAMS, FINAN and SMITH, JJ.

*George J. Goldsborough, Jr.,* for appellant.

*James A. Wise,* with whom was *J. Owen Wise* on the brief,
for appellee.

FINAN, J., delivered the opinion of the Court.

This is an appeal from a directed verdict for the defendant-
appellee, The Pennsylvania Railroad Company (Railroad) en-
tered by Chief Judge J. DeWeese Carter of the Circuit Court
for Caroline County at the close of the case. Plaintiff-appel-
lant's motion for a new trial was denied and this appeal fol-
lowed.

The case arises out of a collision which occurred on Decem-
ber 23, 1964, at a railroad crossing in Caroline County between
a pickup truck, driven by the appellant Leroy M. Lord (Lord)
and a train of the Railroad which was moving through the
crossing.

The accident occurred where State Route 313/318 (com-
bined), known as the Federalsburg By-Pass, crosses at grade
the tracks of the Railroad just west of Marshy Hope Creek. The
crossing is located in an unlighted rural area surrounded on
all sides by woods cut back 30 to 40 feet from the center of the
highway so that the tracks emerge from the woods on one side,
cross the highway, and disappear into the woods on the other
side. As the plaintiff approached there was on oval, black and
orange, State Road's warning sign with the legend "R X R"
at the right of the roadside 380 feet from the crossing. The
same legend is painted on the hard-surfaced roadbed 345 feet
from the crossing. There was a standard crossbuck sign, of
some age, standing immediately adjacent to the track at the
crossing to the plaintiff's right. There was testimony to the
effect that there was an unobstructed daylight view approach-
ing the crossing of at least 600 to 1,000 feet. On the night of the
accident the weather was clear, the road dry and the night dark.

At about 8:00 P.M. on the night in question, Lord was traveling west on the Federalsburg By-Pass toward Preston, driving his employer's pick-up truck at about 50 m.p.h., which was the posted speed limit. His headlights were on and working. Lord knew where this crossing was located because for a year or more prior to the accident, he had passed it on the average of twice a week and he admitted having seen the roadside warning sign as well as the roadbed markings but he had never seen a train at the crossing.

The crossing was used daily by only one unscheduled round-trip freight train. On the night of the accident this train, which was composed of an engine and twelve unlighted boxcars, reached the intersection shortly before 8:00 P.M. It came to a complete stop 12 to 15 feet before reaching the paved highway and the brakeman disembarked. He proceeded to the intersection to determine if highway traffic was approaching, and finding none, waved his lantern as a signal for the train to proceed across the intersection. The brakeman boarded the train as it came past him. The train was traversing the crossing perpendicular to the highway at about 4 to 12 m.p.h. when Lord reached the crossing. According to his version when he saw the train he was within 50 to 60 feet of it and could not stop, although he tried. He struck the seventh boxcar from the back of the engine damaging the truck he was driving and causing personal injury to himself.

The court below granted the motion for a directed verdict in favor of the Railroad on the dual grounds (1) that there was no evidence from which the jury could have reasonably found the railroad guilty of primary negligence and (2) that Lord, as a matter of law, was guilty of negligence.

Since it is the opinion of this Court that the plaintiff Lord, as a matter of law, was guilty of negligence and this alone is sufficient grounds for affirmance of the lower court's action directing the verdict for the Railroad, we find it unnecessary to consider the question of primary negligence and address ourselves solely to the question of the plaintiff's negligence.

This Court many years ago speaking through Judge Parke stated:

"* * * The recognized rule in this State is that it is

negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains, and that this duty continues until the tracks are reached. If the view of the track is not fully in view in both directions in the immediate approach to the crossing due care would require that the party intending to cross the railroad tracks should stop, look and listen before attempting to cross. * * * [Citing numerous cases]." *Penna. R. R. Co. v. Yingling,* 148 Md. 169, 179, 129 A. 36, 41 A.L.R. 398 (1925).

This is still the law in Maryland today and indeed, the doctrine though harsh, has also been perpetuated by the Boulevard Rule. This Court recognized it in *Carlin v. Worthington,* 172 Md. 505, 509, 192 A. 356 (1937), stating through Judge Sloan (later Chief Judge) : "It ["Favored Driver" "Boulevard Rule"] is the application by statute of the old 'stop, look and listen' rule with respect to railways, which is, as stated in *Philadelphia, W. & B. R. Co. v. Hogeland,* 66 Md. 149, 161, 7 A. 105, 107."

The appellant made some effort to distinguish the instant case where the train was already on the crossing from that situation where the train strikes the vehicle as it attempts to cross in front of the train. However, there is no valid reason why the duty to "stop, look and listen" should be imposed upon a motorist who is approaching a railroad crossing upon which no train is as yet passing and he be relieved of such a duty when approaching the crossing when the train is already moving over it.

The case law of this State overwhelmingly holds that, absent unusual or special circumstances (not present in this case) a motorist who strikes the cars of a train stopped on the crossing or moving over it is, as a matter of law, guilty of contributory negligence. In *Negretti v. Balto. & O. R. Co.,* 179 Md. 30, 16 A. 2d 902 (1940), this Court was presented with a case wherein the motorist returning home in the early morning after working a night shift and traveling at about 15 m.p.h. struck a train moving across a crossing on Chesapeake Avenue in the

City of Baltimore under conditions which were described as "foggy," without even having had the benefit of seeing the cross-buck railroad crossing signs. There was also evidence that the motorist knew that there was a railroad crossing in the area but that he usually used the streetcar or was transported to and from work in the car of a friend. Chief Judge Bond speaking for the Court said:

> "Cases of collisions between automobiles and trains standing on grade crossings or passing over them have been numerous in other jurisdictions, and the great majority of courts have considered that persons driving into the sides of trains could not, as matter of law, recover, even when there were some negligent omissions of duty by the railroad companies. * * *." [*Id.* at 34]

The plaintiff argues that under the facts of this case he did not have sufficient advance warning of the existence of a train on the crossing and for that reason he could not be held negligent *per se*. Let us look, however, at the warning he had concerning the presence of the crossing, *ergo,* the possibility of a train on the crossing. According to his own testimony he was not only familiar with the location of the crossing, having passed over this highway at least twice a week for more than a year, but as he approached it he admits he saw both the black and orange warning sign with the legend "R X R" to his right roadside, 380 feet from the crossing and the same legend painted on the hard-surfaced roadbed 345 feet from the crossing.

The record reveals that at the request of the plaintiff's counsel the Railroad admitted that the total stopping distance of a vehicle traveling at 50 m.p.h., the legal speed limit at the scene of the accident, is 240 feet. As has been stated the first warning sign was located 380 feet from the nearest rail.

The testimony was that the straightaway extended for a distance of 600 to 1,000 feet. Code (1967 Repl. Vol.), Art. 66½, sec. 281(a) requires that the headlights of a vehicle have a high beam of such intensity as to reveal persons and vehicles at a distance of at least 350 feet ahead and a low beam of 100 feet. At the speed of 50 m.p.h. the record reveals that Lord would be

traveling at 73.335 feet per second; considering this and the total distance required to bring his vehicle to a stop, the exercise of reasonable care would have required him to use the high beam lights. If his lights were working well, as he says they were, he should have seen a person or vehicle 350 feet ahead of him.

Even though the action occurred at night and it was dark it does not appear that it was impossible for Lord, in the exercise of reasonable care, to have seen the train on the crossing. The fact that it was dark should have, if anything, increased the exercise of care on the part of Lord. See *Negretti v. Balto. & O. R. Co., supra.* The plaintiff's testimony was that he did not see the train until he was 50 or 60 feet from it and only then did he attempt to stop. In regard to this testimony we recall the statement of Judge Oppenheimer when speaking for this Court in *Sears v. B. and O. Railroad,* 219 Md. 118, 123, 148 A. 2d 366 (1959) : "* * * we take account of the oft-repeated truism that if a witness says he looked and did not see when if he had looked he must have seen, such testimony is unworthy of consideration. * * *."

Lord does not deny that he saw the oval, black and orange, "R X R" sign 380 feet from the crossing and the "R X R" marking on the hard-surfaced highway, even though they were not painted with reflectorized material, as the appellant contended they should have been. The important fact is that he saw them.

We think that under the law as it exists in this State the plaintiff Lord was guilty of negligent conduct. Many years ago Judge Alvey gave such a rigid construction to the "stop, look and listen rule" that this Court held that the driver of a horse drawn covered wagon, although not having the benefit of any signs, should have taken warning of the possibility of an approaching train merely because he saw railroad tracks crossing the road in front of him. *Maryland Central Railroad v. Neubeur,* 62 Md. 391, 399 (1884). We hasten to add that the Court is acutely aware that we are no longer in the horse and buggy era and we cite *Neubeur* simply to illustrate the historical respect with which the "stop, look and listen rule" is endowed.

Also, in *Buczkowski v. Canton R. R. Co.,* 181 Md. 377, 30 A. 2d 257 (1943), a case which although turning on the question of primary negligence employs language which is pertinent to the case at bar, since it involved an unlighted boxcar obstructing Eastern Avenue in Baltimore City at 2:00 A.M., Judge Ogle Marbury speaking for the Court said:

> "The failure to have safety gates at this crossing does not seem to have been the proximate cause of the accident. The cause was the failure to see the box car, which was much larger, and had a much higher visibility than safety gates would have had. The latter are chiefly valuable in warning drivers on the highway of an approaching train, and not in giving notice of a train already on or crossing the highway, which of itself gives better warning than the gates. * * *." [*Id.* at 380]

In affirming the lower court's finding that the plaintiff was guilty of negligence, we conclude that Lord disregarded the warning signs and did not attempt to reduce his speed until it was too late for him to bring his vehicle to a stop. The facts compel the conclusion that he failed to pay attention to the road in front of him, particularly when he knew he was approaching a railroad crossing. His actions amounted to a failure on his part to exercise that degree of care and caution for his own safety, that is required of a reasonable prudent person under like and similar circumstances. The plaintiff's own testimony admits of no other rational inference but that he was guilty of negligence. As has been stated by this Court, "* * * It is regrettable that such accidents happen, but merely because a traveler is injured, does not justify the courts in permitting a jury to give him damages against a railway company. He must be free from blame himself before he can recover because of the negligence of the railroad. * * *." *Western Md. Ry. Co. v. Davidson,* 192 Md. 119, 126, 63 A. 2d 319, 322 (1949).

The appellant also assigned as error the lower court's sustaining the Railroad's objection to the expert testimony proffered by the plaintiff, concerning the adequacy of the safeguards used by the Railroad at the crossing in question. Prior to the

120

trial and again at the close of the plaintiff's case the plaintiff proffered to show by the testimony of Dr. J. Carl McMonagle, a highway engineer and expert witness, that the methods used by the railroad to safeguard the public at the crossing in question were inadequate. Since we affirmed the lower court's finding that the appellant was, as a matter of law, guilty of negligence, the question of the proffered testimony loses significance.

*Judgment affirmed, with costs.*